Michael **SNYDER** et al., Plaintiffs,

v.

The **BOARD OF TRUSTEES OF the UNIVERSITY OF ILLINOIS**, Norman A. Parker and **H. W. Bailey**, Defendants.

No. 66 C 847.

United States District Court
N. D. Illinois, E. D.
July. 11, 1968.

---

David J. Krupp, Robert Plotkin, Ronald S. Miller, Chicago, Ill., for plaintiffs.

Albert E. Jenner, Jr., Keith F. Bode, Lael F. Johnson, for Raymond, Mayer, Jenner & Block, Chicago, Ill., for defendants.

Before KILEY, Circuit Judge, and DECKER and NAPOLI, District Judges.

NAPOLI, District Judge.

This is a class action, brought on behalf of all students enrolled at the University of Illinois, including the specified subclass of all members of the "Illini Humanists" (hereinafter referred to as the "Humanists"), a voluntary unincorporated association of students on the Chicago Circle Campus of the University of Illinois. The Humanists are an officially recognized student organization at the Circle Campus of the University of Illinois. Several faculty members at the Circle Campus have also joined as plaintiffs, representing the class of all faculty members at the University of Illinois.

Defendant Board of Trustees of the University of Illinois (hereinafter referred to as the "Board") is a body corporate entrusted with the government of the University of Illinois, including supervision of lands and buildings and other property belonging to the University, both at its campus in Chicago, and at the campus in Champaign, Illinois. Individual defendants Norman A. Parker and H. W. Bailey are, respectively, a vice president and an assistant vice president of the University, who are in charge of the adminstration of the Chicago Circle Campus, and are authorized to act as agents of the Board.

It is stipulated that the University, under supervision of the Board, permits the use of its facilities by recognized student organizations, including the Humanists, for the purpose of holding meetings at which guest speakers from off campus are presented. On several occasions the Board has permitted the Humanists and other student organiza-tions to invite highly controversial speakers to address their meetings.

The present dispute between the parties results from the persistent refusal of defendants to allow one Louis Diskin, a member of the Communist party of the United States, to speak at Humanist on campus meetings, on such topics as "Communism and Youth", "The Communist Party Platform" and "Views of the Communist Party Regarding Proposed Action Concerning the War in Vietnam, Civil Rights, etc.," unless the student officers of the Humanists, and their faculty advisor, plaintiff Bartky, give prior written assurances that "the proposed speech by Mr. Louis Diskin * * * will not carry on, advertise or publicize the subversive and seditious activities of the Communist Party, U.S. A., and that, to the best of (your) knowledge, no violation of law will occur in connection with the speech." The speaker, Louis Diskin was also required to execute such assurances as a condition to permission being granted. Plaintiffs on several occasions invited Diskin to speak but refused to give the written assurances, and in each case defendants refused to permit the proposed meeting. In an affidavit filed in this cause, defendant Parker admits that if the requested assurances had been filed on any of these occasions, he would have permitted Diskin to speak at the Humanist meeting.

The sole reason given by defendants for cancellation of the various Humanist meetings is that the scheduled meetings and speeches would violate the provisions of a statute of the State of Illinois, Illinois Revised Statutes, Chapter 144, Section 48.8 (hereinafter referred to as the "Clabaugh Act"), which provides as follows,

No trustee, official, instructor, or other employee of the University of Illinois shall extend to any subversive, seditious, and un-American organization, or to its representatives, the use of any facilities of the University for the purpose of carrying on, advertising or publicizing the activities of such

organization. 1947, Aug. 8, Laws 1947, p. 1746, § 1.

■ Plaintiffs ask that this Court declare the Clabaugh Act illegal and void on its face and as applied, for contravention of the First and Fourteenth Amendments to the Constitution of the United States, and that defendants be permanently enjoined from enforcing the Clabaugh Act in so far as it relates to the rights of plaintiffs. Since this is an action seeking an injunction restraining the enforcement of a state statute on the grounds of its repugnance to the United States Constitution, a three judge Court was convened. 28 U.S.C. § 2281.

All material facts herein have either been stipulated by the parties or admitted in the answer. Thus plaintiffs' pending motion for summary judgment presents only issues of law for determination by this Court.

## I. Jurisdiction over the subject matter

■ Jurisdiction lies properly here under 28 U.S.C. § 1343(3) and (4). Defendants contend that, since plaintiffs have no constitutional right to use university lecture halls, they have failed to allege a cause of action within the ambit of the Civil Rights Act. Whether this is the correct characterization of plaintiffs' action, and whether, as a matter of law, the constitutional rights of plaintiffs have been violated, must be determined after the Court assumes jurisdiction. Assertion of a non-frivolous claim of a federal right, and the alleged denial of that right by defendants, is sufficient to preclude a dismissal for want of federal jurisdiction, and judgment must be on the merits. cf. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

## II. Class action

■ Rule 23 of the Federal Rules of Civil Procedure requires that the Court determine whether the action is properly maintained as a class action, and if so, whether and to what extent other members of the class shall be notified of the pendency of the action. We find that all the necessary prerequisites to a class action are present here. It is immaterial that some members of the student body at the University of Illinois, or that some members of the faculty, may not approve of the maintenance of this lawsuit. The constitutionality *vel non* of the Clabaugh Act has been called into question in an actual controversy between the named plaintiffs and the defendants. Resolution of this issue will, as a practical matter, be dispositive of the rights of all other members of the class, whether or not they approve of the maintenance of this suit. Although it is scarcely conceivable that any member of the various classes and subclasses of plaintiffs will be prejudiced by our order today, pursuant to Rule 23(c) (2) of the Federal Rules of Civil Procedure, leave will be given any member of the classes represented by plaintiffs here to enter an appearance through counsel within the next thirty days, in order to request exclusion from, or modification of, our judgment today. Finally, we note from the record the extensive publicity that has been given this case, both in the newspapers and through various channels of communication around the University of Illinois, and find that the notice requirements of Rule 23 are satisfied simply by the widespread notoriety this case has been given. Personal notification to each member of the class would be both impractical and unnecessary, especially because judgment today is in favor of the class.

## III. Standing

The various classes represented by plaintiffs comprise, broadly speaking, the potential audiences for various speeches which would, but for the enforcement of the Clabaugh Act by the defendants, have been given on the campus at the University of Illinois. The speaker has not joined in this action. Although most challenges to regulations of speech are initiated by the speaker, there is respectable authority indicating that the audience, which is, after all, a principal beneficiary of the First Amendment, also has standing to seek

relief against illegal censorship. Lamont v. Postmaster General, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965). (Brennan & Goldberg, JJ., concurring) (allowing addressee of mail containing communist propaganda to challenge seizure.)

In the First Amendment area, where traditional notions of standing have often been relaxed in order to vindicate rights of free speech and association, rights which have always been jealously protected by the Courts, we see no reason why the audience should be precluded from asserting their interests, merely because the speaker is disinclined to wage a legal battle.[1] There is a First Amendment right to peacefully assemble to listen to the speaker of one's choice, which may not be impaired by state legislation any more than the right of the speaker may be impaired.

(T)he protection of the Bill of Rights goes beyond the specific guarantees to protect from congressional abridgement those equally fundamental personal rights necessary to make the express guarantees fully meaningful. (citing cases). I think the right to receive publications is such a fundamental right. The dissemination of ideas can accomplish nothing if otherwise willing addressees are not free to receive and consider them. It would be a barren marketplace of ideas that had only sellers and no buyers. Lamont v. Postmaster General, 381 U.S. 301, at 308, 85 S.Ct. 1493, at 1497 (1965). (Brennan, J., concurring)

As long as the interest of the plaintiffs as members of an audience is not merely hypothetical, but is part of an actual controversy in which a law has adversely affected the right to speak and to listen, the audience has standing to challenge a legislative enactment restricting free speech.

It is also clear that the quantum of interference with First Amendment liberties will not be determinative of whether standing exists. Engel v. Vitale, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962) (voluntary recital of 22 word non-denominational prayer in public schools held to violate establishment of religion clause of First Amendment); Lamont v. Postmaster General, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965) (requirement of returning postal reply card in order to receive mail containing Communist propaganda held a limitation on unfettered exercise of First Amendment rights.) Thus it is no objection to plaintiffs' standing here to assert that they could have heard Diskin at some off campus location, or that they could have heard him speak on some less volatile subject.

Nor is it particularly relevant that the Clabaugh Act is so drafted that it affects speech in an oblique manner, by purporting to regulate only the conduct of the Board of Trustees and other officials and employees at the University of Illinois. We are not the first Court to look through the form to the substance of a regulation touching First Amendment freedoms. The speech-inhibiting purpose[2] of the Clabaugh Act is apparent from the face of the Act itself.

IV. Constitutionality of the Clabaugh Act.

At the outset, we note that plaintiffs do not claim an absolute First

1. See "Developments in the Law—Academic Freedom", 81 Harv.Law Rev. 1045, 1132–1134.

2. The preamble to the Clabaugh Act of 1947 reflects the mood of the times:
 Whereas, the universities of America have been the breeding ground of a series of invidious Communist inspired organizations which have sought to instill in the hearts of American youth contempt and hatred for ideals to which the people of this great nation have been dedicated; and
 Whereas, at present there is on the campus of the University of Illinois a society euphemistically designated the "American Youth for Democracy", which strives, not for the preservation of those institutions to which a group of students earnestly working for democracy would be devoted, but instead for the destruction of principles that democracy holds sacred, therefore, etc.

Amendment right to unlimited use of university lecture halls for their speaking purposes. The campuses of state universities are public buildings dedicated to a special function: education. As such, there is no First Amendment objection to limiting the use of these state-owned facilities to the purpose to which they have been dedicated. Even granting that freedom of speech occupies a preferred position in the hierarchy of constitutional values, it does not follow that it may be exercised at any time, in any manner, on any state-owned property without regard to the primary use to which the property has been dedicated. See Adderley v. State of Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966). However, it is clear from the record here that the University of Illinois has adopted an open door policy with regard to guest speakers, allowing any guest speaker who had been invited by a recognized student group, to speak at a reasonable time, space permitting; but that the University denied plaintiffs the opportunity to hear the speaker of their choice, solely on the basis of the speaker's associations and the views to be espoused.

 The constitutional question thus presented is whether the enforcement of the Clabaugh Act, in the context of a state sanctioned permissive attitude toward guest speakers at the University of Illinois, violates First and Fourteenth Amendment rights of the members of the audience to peacefully assemble at a regular student organization meeting in order to hear the speaker of their choice.[3] We hold that the Clabaugh Act, both on its face and as applied to these plaintiffs, has denied them due process of law, because it lacks the precision of language required for a statute regulating an area so closely intertwined with First Amendment liberties; because it is an unjustifiable prior restraint to

speech; and because it lacks the procedural safeguards required for a form of regulation amounting to censorship.

 The First Amendment to the United States Constitution provides that "Congress shall make no law * * * abridging the freedom of speech * * * or the right of the people peaceably to assemble * * *" The First Amendment has been incorporated into the Fourteenth Amendment so as to apply also to the states as an aspect of substantive due process. Gitlow v. People of State of New York, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925). State school boards and universities, no less than the state from which they derive their authority, must also obey the mandate of the First Amendment.

 Disregarding for present purposes the special cases of obscenity and libel, it is accurate to state that speech may be suppressed only when it presents a "clear and present danger" that substantive evil will result. Schenck v. United States, 249 U.S. 47, 52, 39 S.Ct. 247, 63 L.Ed. 470 (1919). More recently, the Supreme Court has reformulated the clear and present danger test as follows: "In each case [courts] must ask whether the gravity of the 'evil', discounted by its improbability, justifies such invasion of free speech as is necessary to avoid the danger." Dennis v. United States, 341 U.S. 494, 510, 71 S.Ct. 857, 868, 95 L.Ed. 1137 (1951) (quoting Judge Hand in the lower court, 2 Cir., 183 F.2d 201, 212.)

 Even in the narrow area in which suppression of speech has been allowed, the Supreme Court has insisted on precision of regulation. Thus, government may not regulate or punish all of the speech-related activities of a member of the Communist party, but only those which it may reach constitutionally. Yates v. United States, 354 U.

---

3. Plaintiffs also attack the Clabaugh Act on the ground that it denies them equal protection of the law, since it applies only to the University of Illinois, and not to other state supported universities.

Because we find that the Clabaugh Act is unconstitutional on First and Fourteenth Amendment grounds, we deem it unnecessary to pass on this alternate contention.

S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957).

■■■ A statute which fails to provide an ascertainable standard of conduct and which because of its vagueness inhibits the exercise of constitutionally protected freedoms of speech and assembly is void. Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L. Ed.2d 377 (1964); Cramp v. Board of Public Instruction, 368 U.S. 278, 82 S. Ct. 275, 7 L.Ed.2d 285 (1961).

■■■ A statute purporting to regulate expression may not be so broad in its sweep as to hazard the loss or impairment of First Amendment freedoms by appearing to cover speech which may not constitutionally be regulated. Nor does it matter that the person challenging the validity of the statute might be subject to regulation under one more narrowly drafted. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L. Ed.2d 22 (1965).

■■■ Finally, "any system of prior restraints comes to this Court bearing a heavy burden against its constitutional validity. (citing cases). We have tolerated such a system only where it operated under judicial superintendence and assured an almost immediate judicial determination of the validity of the restraint." Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963). The Supreme Court has consistently maintained this hostile attitude toward prior restraints. See, e. g., Near v. State of Minnesota, 283 U.S. 697, 713–720, 51 S. Ct. 625, 75 L.Ed. 1357 (1931); Lovell v. City of Griffin, 303 U.S. 444, 451–452, 58 S.Ct. 666, 82 L.Ed. 949 (1938).

Viewed against the backdrop of these constitutional principles, the Clabaugh Act, and the regulations made pursuant to it by the Board are abhorrent to the Constitution of the United States, both on their face and as applied.

First of all, the language fixing standards for regulation is impermissibly vague. "Because First Amendment rights need breathing space to survive, government may regulate in this area only with narrow specificity." NAACP v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963). The Clabaugh Act requires the Board to make a determination of whether a proposed speaker is a member or representative of a "subversive, seditious, and un-American" organization. These terms are not further clarified or defined. Similar language ("treasonable or seditious") was recently found to be overly vague in a teacher loyalty oath case, Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967).

Furthermore, a three judge court in the Middle District of North Carolina recently invalidated a statute, (quite similar to the Clabaugh Act), which regulated speakers at a state-supported college, in an action brought by members of the student body and by the banned speakers. Dickson v. Sitterson, D.C., 280 F.Supp. 486 (1968). The North Carolina statute there directed the board of trustees to publish regulations governing the use of facilities of any state-supported college by any person who "[i]s a known member of the Communist party"; who "[i]s known to advocate the overthrow of the Constitution of the United States or of the State of North Carolina"; or who "[h]as pleaded the Fifth Amendment of the Constitution of the United States in refusing to answer any question, with respect to Communist or subversive connections, or activities, before any duly constituted legislative committee, any judicial tribunal, or any executive or administrative board of the United States or any state." The North Carolina Court found the quoted language impermissibly vague, and struck down the statute. Quite obviously, the language of the Clabaugh Act is even more vague than the language of the North Carolina statute.

The vice of vagueness in a statute regulating speech is doubly dangerous to

First Amendment liberties. First of all, in a prior restraint context such as we have here, it presents the opportunity for discriminatory enforcement. Even where the licensor is desirous of acting in good faith, as the defendants here obviously were, the fact that he may be subject to criminal jeopardy if he does not carefully perform his statutory duties,[4] puts him in a position where he may adopt regulations overzealously, lest he become subject to the criminal sanctions. In fact, the defendants here did precisely that: they couched their forms of required prior assurances in the very broad language of the Clabaugh Act itself.

Such a vaguely drawn statute may also affect the speaker and his audience. They may "steer far wider of the unlawful zone" than if the boundaries of the forbidden areas were clearly marked. Even where there is no penalty on the speaker or his audience, those who respect the written law as absolute may be influenced to forego exercise of protected forms of expression. As a result, "the free dissemination of ideas may be the loser." Smith v. People of State of California, 361 U.S. 147, 151, 80 S.Ct. 215, 218, 4 L.Ed.2d 205 (1959).

The Clabaugh Act in part proscribes the "advertising" and "publicizing" of activities of "subversive, seditious, and un-American" organizations. Except in

the most extraordinary factual setting, where there would be a clear danger of immediate violent audience reaction at the mere mention of the activities of an organization, it would seem that the "advertising" and "publicizing" of the political viewpoints in the market place of ideas is close to the very heart of what the First Amendment was intended to protect. Yet the Clabaugh Act prohibits the described speech in all contexts, without regard to the likelihood that the audience will immediately and violently react to the words of the speaker, either by committing acts of violent overthrow of the government; by turning violently against the speaker; or by committing other illegal acts after incitement by the speaker.[5] Hence the Clabaugh Act is overbroad because it applies not only in cases where suppression of speech is arguably permissible, but also to situations where a peaceable, orderly discussion is taking place.

It is immaterial that defendants have attempted to give a narrowing administrative interpretation to the statute. As we noted above, the defendants required prior assurances to be executed by plaintiffs in the same vague language found in the Clabaugh Act itself. This can hardly be called a narrowing interpretation.

In addition to vagueness and overbroadness, the Clabaugh Act contains a

---

4. The Clabaugh Act itself contains no express sanctions whatsoever. It would appear that the only sanctions possible for violation would be a criminal action against the persons charged with enforcing it, under the Official Misconduct statute of the State of Illinois, Illinois Revised Statutes, Chapter 38, § 33–3 (1961). That statute provides,

A public officer or employee commits misconduct when, in his official capacity, he commits any of the following acts:
 (a) Intentionally or recklessly fails to perform any mandatory duty as required by law.
 (b) Knowingly performs an act which he knows he is forbidden by law to perform * * *
A public officer or employee convicted of violating any provision of this Section

forfeits his office or employment. In addition, he shall be fined not to exceed $1,000 or be imprisoned in a penal institution other than the penitentiary not to exceed one year or in the penitentiary from one to 5 years, or both fined and imprisoned. 1961, July 28, Laws 1961, p. 1983, § 33–3.

5. In such extraordinary situations speech may be regulated since "[i]t is not a constitutional principle that, in acting to preserve order, the police must proceed against the crowd, whatever its size and temper, and not against the speaker." Niemotko v. State of Maryland, 340 U.S. 268, 289, 71 S.Ct. 325, 336, 95 L.Ed. 267 (1951) (concurring opinion); cf. also Chaplinsky v. State of New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942).

third major constitutional flaw. If enforced, the Clabaugh Act stifles communication even before it has taken place. It does not regulate merely the form of the speech—the time, place, and manner of speaking. It classifies and regulates speech on the basis of the content, the very ideas to be expressed. By thus acting as a prior restraint on the substance of the contemplated speech, the Clabaugh Act raises the spectre of censorship.

While the federal courts will normally not interfere with a law enforcement mechanism chosen by a State, where we are dealing with very narrow exceptions to the otherwise absolute rule that legislation abridging the right of free expression is presumptively contrary to the First Amendment, the choice of prior censorship as an enforcement device by a legislative body will be very carefully scrutinized by the Courts. If the enforcement machinery leaves open the slightest possibility that protected expression will be adversely affected, the legislation must be struck down.[6]

Even assuming that prior restraint based solely on the content of the proposed speech is at all possible outside the special context of regulating obscenity in motion pictures, see Times Film Corporation v. City of Chicago, 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403 (1961) (majority and dissenting opinions), the Clabaugh Act fails to include the procedural safeguards now required for such a drastic form of regulation in an area touching upon our precious First Amendment freedoms.

The Supreme Court in Freedman v. State of Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), has set down the strict guidelines which it requires in censorship cases. First of all, the censor must have the burden of proving that the film is expression un-

protected by the Constitution. Secondly, any restraint prior to judicial review must be limited to preservation of the status quo and for the shortest period compatible with sound judicial procedure. Finally, there must be assurance of a prompt final judicial determination that the matter is beyond the protection of the First Amendment.

The Clabaugh Act obviously falls far short of providing the safeguards required. No provision for judicial determination is included at all. If enforced as written, the Act would make the censor's determination final, unless the speaker or his audience were hardy enough to commence a major piece of constitutional litigation, such as the suit here, in order to challenge the basic authority of the censor. Furthermore, as we pointed out above, the Act invites (because of vagueness), even requires (because of overbreadth), the censor to rule out speech which is clearly protected by the First Amendment. In the meantime, while a lawsuit proceeds in the federal courts, the censor's ruling, until reversed, remains effective. The "propitious moment" for the contemplated speech may have long since passed, before a favorable ruling can be obtained from the courts, in a suit instigated by the speaker or his frustrated audience.

We conclude that such a procedure for regulating the exercise of First Amendment freedoms, under standards which are impermissibly vague and overbroad, is repugnant to the due process clause of the Fourteenth Amendment. We therefore strike down the Clabaugh Act and all administrative regulations enacted pursuant thereto, and we hereby permanently enjoin and restrain the defendants and their successors from enforcing the provisions of Ill.Rev.Stat. Ch. 144, Sec. 48.8 in any manner whatsoever.

---

6. This rule does not leave the States powerless to act in this area, of course. Criminal speech, such as obscenity, libel, or immediate incitement to riot or violent overthrow of established governmental authority may be dealt with by laws which impose civil or criminal liability for the completed verbal act. See, e. g., 18 U.S.C. § 2385; Illinois Revised Statutes, ch. 38, § 30-3 (1961).

We wish to emphasize that we do not by our decision today limit in any way the legitimate interest of the University officials in protecting the primary function of a state supported higher educational institution.

## ORDER

In accordance with the foregoing opinion, it is hereby ordered, adjudged and decreed:

1. That this Court has jurisdiction over the parties and over the subject matter under 28 U.S.C. § 1343(3) and (4).

2. That this action is properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs represent the class of all students and faculty members at the University of Illinois, and all members of the "Illini Humanists", an official student organization at the University of Illinois. Other members of the class are hereby given leave to enter an appearance through counsel within the next 30 days, in order to request exclusion from the class, or modification of this order.

3. That plaintiffs' motion for summary judgment be, and said motion is hereby, allowed.

4. That judgment be entered in favor of plaintiffs and against defendants, the Board of Trustees of the University of Illinois, Norman A. Parker, and H. W. Bailey.

5. That Chapter 144, Section 48.8 of the Illinois Revised Statutes, and all regulations enacted by defendants pursuant thereto, are illegal and void, both on their face and as applied, for contravention of the First and Fourteenth Amendments to the Constitution of the United States.

6. That defendants and each of them, their agents and servants, are hereby permanently enjoined from executing, enforcing, or applying the said statute, and all regulations enacted by defendants pursuant thereto.