**Jim SMITH et al.**

v.

**UNIVERSITY OF TENNESSEE et al.**

**Civ. A. No. 6557.**

United States District Court
E. D. Tennessee, N. D.

April 18, 1969.

New York City, Morton Stavis, Newark, N. J., Dennis J. Roberts, Harriet Van Tassel, Rita L. Murphy, William J. Bender, Newark, N. J., for plaintiffs.

H. H. McCampbell, Jr., Louis C. Woolf, Knoxville, Tenn., for defendants.

MEMORANDUM

ROBERT L. TAYLOR, Chief Judge.

Plaintiffs seek to enjoin officials of the University of Tennessee from enforcing rules which prohibit students from inviting as speakers for university sponsored programs persons who do not meet certain standards. Jurisdiction is based on Title 28 U.S.C. Sections 1331, 1343, 2201 and 2202, and Title 42 U.S.C. Sections 1981 and 1983.

Plaintiffs are primarily students and faculty of the defendant university who sue individually and on behalf of all those similarly situated under Rule 23 of the Federal Rules of Civil Procedure.

The University of Tennessee is a state owned and operated institution of higher learning. The defendant Buford Ellington is sued as the Chairman of the Board of Trustees, Governor of the State, and individually. Defendants A. D. Holt, Charles H. Weaver and Robert Gordon are respectively the President, Chancellor and Vice-Chancellor for Student Affairs of the University of Tennessee.

Throughout the period of the operative facts in this suit and until the present the University has had in force guidelines for student invitations to speakers. Those guidelines appear in the student handbook as follows:

A. *Choice of Speaker*

An invitation to a speaker who is to be sponsored by a student organization must be approved by the appropriate officers and faculty-alumni advisers to that organization and registered with and approved by the Dean of Students as meeting the following criteria:

(1) The speaker's competence and topic shall be relevant to the approved

Richard L. Hollow, Knoxville, Tenn., William M. Kunstler, Arthur Kinoy,

constitutional purpose of the organization;

(2) There is no reason to believe that the speaker intends to present a personal defense against alleged misconduct or crime which is being adjudicated in the courts;

(3) There is no reason to believe that he might speak in a libelous, scurrilous or defamatory manner or in violation of public laws which prohibit incitement to riot and conspiracy to overthrow the government by force.

\*  \*  \*  \*  \*  \*

C. *Appeal or Referral*

In addition to the criteria in (A) above, the University Faculty Committee must consider the general question of whether the invitation and its timing are in the best interests of the University.

Issues is one of two officially sanctioned lecture series at the University of Tennessee. Unlike Man and his Environment, the other lecture series, Issues is presently composed solely of student members. Both Issues and Man and his Environment are financed through the Student Activities and Service Fee which is assessed quarterly upon all full-time university students to defray the cost of a long list of student activities and services. Issues operates on an annual budget of $12,000.00 and Man and his Environment on an annual budget of $9,000.00.

As one of the speakers for its fall quarter program Issues had selected Dick Gregory, the Negro civil rights activist who at the time of the invitation was a candidate for President of the United States. After the invitation was initially approved by the administrative officials as required by the handbook rules, the contract for Mr. Gregory's appearance was duly forwarded by Issues to defendant Gordon for execution by the appropriate financial officers of the University.

On or about September 10, 1968, officers of Issues were informed by Chancellor Weaver, in the presence of Gordon, that Mr. Gregory would not be permitted to appear on the University campus as a student invited speaker. Two days later, Chancellor Weaver issued a statement entitled "Freedom of Speech on the Campus" in which he said that the administration fully supported unhindered freedom of speech by faculty, students and speakers invited by the academic departments. He expressed the view that student speaker invitation programs constituted in effect a separate university of questionable educational benefit, and which created problems in maintaining the freedom of speech of the faculty.

The Issues program issued an invitation to Dr. Timothy Leary to speak on February 27, 1969 as a part of Winter Quarter Issues schedule. Leary is known primarily as an advocate of the use of the hallucinogenic drug LSD. On February 4, Chancellor Weaver announced that the University administration had refused finally to issue a contract for the appearance on campus of Dr. Leary.

During its October meeting the Board of Trustees adopted a resolution which directed the chancellors of the individual campuses of the university to develop speaker policies which must be submitted to and approved by the Trustees before becoming effective. At its February meeting, the Board set up a committee to recommend a new speakers policy for the consideration of the Board at its June gathering.

The Issues program has scheduled an appearance by Leary for May 6, 1969; but the Acting Vice Chancellor for Student Affairs has declined to approve the invitation. Plaintiffs allege present and future injury in the nature of a violation of their First and Fourteenth Amendment rights because of the refusal of the defendants to allow Gregory and Leary to speak. They contend that the policy as announced in the student handbook is unconstitutionally broad and vague. Temporary and permanent injunctive relief are sought and in addition a declaratory judgment that the

current policy of the University is unconstitutional.

■ Before the Court may proceed to consider plaintiffs' request for injunctive and declaratory relief, the facts must establish that an actual case and controversy exists between parties with adverse legal interests. Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113, March 4, 1969. Basically the question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826.

■ Although the invited speaker is not a plaintiff in this suit, the legal interests of the students who sought to invite Dr. Leary and who would have made up the audience are sufficient to present a substantial legal controversy with the persons whose actions barred the appearance. Snyder v. Board of Trustees of University of Illinois, D.C., 286 F.Supp. 927. See: Lamont v. Postmaster General of United States, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398.

The interests of plaintiffs are analogous to those of the National States Rights Party who were enjoined to assemble for speeches in the case of Carroll v. President and Commissioners of Princess Anne, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325. Since the plaintiffs are yet attempting to arrange a date for Dr. Leary to speak, the case does not involve the mootness which required dismissal in Golden v. Zwickler, supra.

This case involves the balancing of rights of students and teachers protected by the First and Fourteenth Amendments of the Federal Constitution and of the officials of the University of Tennessee to control and regulate public speaking on University property. If possible, the rights of the parties should be reconciled so as to avoid the destruction of the rights of either.

The First Amendment provides in pertinent part:

"Congress shall make no law * * * abridging the freedom of speech, * * * or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

■ The right of freedom of speech is applicable to States under the Due Process Clause of the Fourteenth Amendment. Gitlow v. New York, 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138; De Jonge v. Oregon, 299 U.S. 353, 57 S. Ct. 255, 81 L.Ed. 278.

■ The First Amendment protection of free speech extends to listeners. Lamont v. Postmaster General, supra. On April 7, 1969, the Supreme Court wrote on the case of Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542, as follows:

"It is now well established that the Constitution protects the right to receive information and ideas. 'This freedom [of speech and press] * * * necessarily protects the right to receive * * *' (Citing cases) This right to receive information and ideas, regardless of their social worth, see Winters v. New York, 333 U.S. 507, 510, 68 S.Ct. 665, 92 L.Ed. 840 (1948), is fundamental to our free society. * * *" 394 U.S. 557, 89 S.Ct. p. 1247.

■ Further, it has long been recognized that in carrying out their primary mission of education, state owned and operated schools may not disregard the constitutional rights of students. Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042; West Virginia State Board of Education v. Barnette, 319 U. S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628; People of State of Ill. ex rel. McCollum v. Board of Education, 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649.

■ It is conceded that the Board of Trustees and administrative officials of

state supported universities have the right to enforce rules and regulations governing the appearance of guest speakers. No one has the absolute, unlimited right to speak on a university campus; however, when the university opens its doors to visiting speakers, it must follow constitutional principles if it seeks to regulate those whom recognized groups may invite. The fundamental question in this lawsuit is whether the applicable constitutional principles require that the university's regulations on student-invited speakers not be vague or broad. If such a duty rests upon the defendants, then the Court must go further and determine whether existing regulations are too vague to meet the constitutional requirements.

In three recent decisions federal district courts have held that when state officials and legislatures undertake to restrict speaker invitations, they may not do so by rules which are too vague or too broad. Snyder v. Board of Trustees of University of Ill., 286 F.Supp. 927 (three judge, N.D.Ill., 1968), arose from the university enforcement of a state statute which prohibited student invitations to speakers who were representatives of any "subversive, seditious, and un-American organizations." The Court held that the students' First Amendment rights were violated and that the statute was unconstitutional for vagueness and because it was in effect a prior restraint on speech which did not have procedural safeguards which might make prior restraint permissible.

A similar North Carolina statute limited university officials in allowing campus facilities to be used by speakers. A three-judge District Court held, Dickson v. Sitterson, 280 F.Supp. 486 (M.D.N.C., 1968), that the statute and university regulations pursuant thereto were unconstitutional for vagueness.

The decision in Brooks v. Auburn University, 296 F.Supp. 188 (E.D.Ala., February 5, 1969), differed from the two previous cases in that no state statute was involved. Auburn's administrative officials denied approval of an invitation to and use of facilities to a student-invited speaker and issued rules for inviting outside speakers. After deciding that the rules were impermissibly broad and vague if considered rules of conduct, the Court held that the rules were regulations of pure speech and amounted to political censorship.

Although appellate federal courts have not ruled on the specific issue, the decisions in the Snyder, Dickson and Brooks cases appear to be in accord with related holdings of the Supreme Court. In the recent decision of Tinker v. Des Moines Independent School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731, February 24, 1969, the Supreme Court held unconstitutional school rules against the wearing of armbands in protest of the Vietnam War. The opinion states:

> "It (wearing armbands) was closely akin to 'pure speech' which, we have repeatedly held, is entitled to comprehensive protection under the First Amendment. (Citing cases)

> "First Amendment rights, applied in light of the special characteristics of the school environment, are available to teachers and students. It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate."

The Court indicated that the area in which school officials may limit free speech is confined to speech that "would materially and substantially disrupt the work and discipline of the school."

In another line of cases the Supreme Court has recognized the right of states to protect their schools from subversion, but has held that states may not use teacher oaths or disclosures of associations which are so vague or broad that they discourage teachers from exercising freedom of speech and association. Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216; Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231; Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629.

Regulations which may limit the exercise of free speech and assembly have often been subjected to the tests of vagueness and broadness. A California statute making unlawful display of a red flag as a symbol of opposition to organized government was held to be so broad that it could prohibit constitutionally protected speech as well as unprotected speech. The Court held it unconstitutional for vagueness. Stromberg v. People of State of California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117.

The Supreme Court in one of its most recent cases, in dealing with a Birmingham, Alabama ordinance that vested power in the city commission to grant permits for parades and demonstration, said in part:

"* * * This ordinance as it was written, therefore, fell squarely within the ambit of the many decisions of this Court over the last 30 years, holding that a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional. 'It is settled by a long line of recent decisions of this Court that an ordinance which, like this one, makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.' * * *" Shuttlesworth v. City of Birmingham, March 10, 1969, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162.

See also, Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471.

■ Unlike laws which penalize speech after it is uttered, as in the case with slander, the university's regulations on speakers have the effect of preventing speech before it is spoken. Prior restraints on speech come to the courts with a heavy presumption against their constitutional validity. Carroll v. President and Commissioners of Princess Anne, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325.

■ The foregoing authorities establish that the defendant's regulations on student-invited speakers may not constitutionally be vague or broad beyond certain limits, when a statute or regulation either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, it violates the due process clause of the Fourteenth Amendment because of vagueness. Dickson v. Sitterson, supra. Stricter standards of vagueness apply where the statute potentially inhibits speech. Cramp v. Board of Public Instruction, 368 U.S. 278, 82 S. Ct. 275, 7 L.Ed.2d 285. Regulations may not withstand constitutional scrutiny which are so broad that they threaten speech which is protected by the First Amendment. Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231.

Guideline No. 1 in the student handbook requires the guest speaker's competence and topic to be relevant to the approved constitutional purpose of the organization. Who is to judge the competence and the topic? What standards are to be used in so judging? Isn't competence, like real estate values, a relative term? Do people always agree as to whether a person is competent or incompetent? The term is so broad and vague that an administrator could, if he chose to do so, act as an unrestrained censor of the expression of ideas with which he does not agree.

Guidelines Nos. 2 and 3 provide in effect that there shall be no reason to believe that the speaker intends to present a personal defense against alleged misconduct or crime which is being adjudicated in the courts and no reason to believe that he will speak in a libelous, scurrilous or defamatory manner or in violation of public laws which prohibit incitement to riot and conspiracy to over-

throw the government by force. Who is to judge these matters and what standards shall be used in finding the answers?

The final and Fourth Guideline provides that the University Faculty Committee in addition to the criteria to be considered in Guidelines 1, 2 and 3 must consider the general question of whether the invitation and its timing are in the best interests of the University. Any speaker could be debarred from the campus if it were determined that he was invited at the wrong time under this guideline. This vests in the administrative officials discretion to grant or withhold a permit upon criteria unrelated to proper regulation of school facilities and is impermissible. Kunz v. New York, 340 U.S. 290, 293, 71 S.Ct. 312, 95 L.Ed. 280; N.A.A.C.P. v. Button, 371 U.S. 415, 432, 83 S.Ct. 328, 9 L.Ed.2d 405; see Tinker v. Des Moines Independent School District, supra.

In holding unconstitutional New York's regulations on subversive activities and speech of teachers, the Supreme Court said in part:

"There can be no doubt of the legitimacy of New York's interest in protecting its education system from subversion. But 'even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved.' Shelton v. Tucker, 364 U.S. 479, 488 [81 S.Ct. 247, 5 L.Ed.2d 231]

"We emphasize once again that '[p]recision of regulation must be the touchstone in an area so closely touching our most precious freedoms,' N.A.A.C.P. v. Button, 371 U.S. 415, 438, [83 S.Ct. 328, 340, 9 L.Ed.2d 405]; '[f]or standards of permissible statutory vagueness are strict in the area of free expression. * * * Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity.' Id., at 432–433 [83 S.Ct. at 337–338.]" Keyishian v. Board of Regents, supra, 385 U.S. pp. 602–604, 87 S.Ct. pp. 683–684.

■ It was the belief of our forefathers that censorship is the enemy of freedom and progress. We have lived by this principle since it was written by them in our Federal Constitution, and it has proved beneficial to the nation and its citizens. The interchange of ideas and beliefs is a constitutionally protected necessity for the advancement of society. See the comments of Mr. Justice Black in the cases of Smith v. California, 361 U.S. 147, 160, 80 S.Ct. 215, 4 L. Ed.2d 205 and Feldman v. United States, 322 U.S. 487, 501, 64 S.Ct. 1082, 88 L. Ed. 1408.

■ The Court is constrained to hold that the plaintiffs are entitled to declaratory relief. The University has made it its policy to allow recognized student groups to invite speakers and to make university facilities available to both speaker and audience. The regulations by which the University denies permission for the appearance of speakers which students have selected are required by the Constitution to be clearly and narrowly worded. The existing regulations which appear in the Student Handbook do not satisfy those requirements.

The defendants are responsible citizens who occupy high positions in state government. We believe that they will abide by the declaration of this Court that the current policy of the University of Tennessee is not in accord with plaintiffs' First Amendment rights because the standards fixed for the selection of outside speakers are too broad and vague. For that reason injunctive relief is not granted at this time but plaintiffs may renew their application at an appropriate time if it becomes necessary.