Charles CLOSE, Plaintiff,

v.

John W. LEDERLE, President of the University of Massachusetts et al., Defendants.

Civ. A. No. 67–598.

United States District Court
D. Massachusetts.

Sept. 10, 1969.

---

Isadore Silver, Belchertown, Mass., for plaintiff.

Howard M. Miller, Asst. Atty. Gen., Boston, Mass., for defendants.

## OPINION

FRANCIS J. W. FORD, District Judge.

Plaintiff in this action is an artist and was formerly an art instructor at the University of Massachusetts. Defendants are the President, Trustees and other officials of the University. The University is a public institution governed by a Board of Trustees appointed by the governor, and the expenses of the University are paid in substantial part from state funds.

For some time prior to January, 1967, works of art had from time to time been placed on exhibition on the campus of the University and particularly on the walls of the corridor of the Student Union Building. No written rules or regulations governing campus art exhibits had ever been issued by the University. However, an informal procedure had grown up under which a representative of the Student Union and a representative of the Department of Art scheduled exhibitions for the Student Union corridor. Prior to the events involved in this case, at least ten art exhibits had been held in the corridor.

The corridor in question is located on the main floor of the Student Union Building. This building operates to provide educational, recreational and dining facilities for students. Its operating expenses are met by funds derived from fees paid by the students. Its day to day activities are supervised by a governing board of students, faculty, administrators and alumni, approved by the President of the University and operating subject to his general supervisory authority.

The corridor in question was used daily by many students, faculty members and administrators, especially by those going to the dining facilities in the building. It was also frequently used by members of the general public, including some children, attending lectures and other activities open to persons outside the university community. The corridor had been redesigned for the specific purpose of displaying exhibits of art.

In the spring of 1966 Professor Norton, the chairman of the Department of Art at the University asked plaintiff, then an art instructor, if he would be interested in scheduling an exhibition of his work. Plaintiff said he would, and eventually, under the informal procedure described above, it was agreed that an exhibition of plaintiff's works would be hung in the Student Union corridor from January 8 to January 31, 1967. An exhibition of 31 works was put in place under plaintiff's supervision on the evening of January 7.

This exhibit consisted of 31 pieces. Some were completed major works, others were preliminary drawings or studies

for these works, included for educational purposes.

Certain of these paintings showing nude or partially nude figures and scenes of bathrooms, as well as certain captions on pictures characterized as depicting campus life, immediately produced discussion and controversy. Several meetings for discussion of the exhibit were held in which several University officials took part including the President, the Dean, the Secretary, the Provost, and on some occasions the Chairman of the Art Department. Plaintiff was not present at these discussions, although on at least one occasion he was sitting outside the meeting room, but was not invited to come inside.

Finally at a meeting on Thursday, January 12, it was decided to remove the exhibition. On that evening the paintings were taken from the walls by employees of the University. Plaintiff was given no notice that this was to be done. His paintings were returned to him several days later.

Plaintiff brings this action for a declaration that the removal of his paintings deprived him of his rights under the First and Fourteenth Amendments and for an order that defendants be required to reinstate his exhibition for a time equivalent to the number of days by which his scheduled exhibition period was cut short. (Except for two paintings which have been destroyed, the other items of the exhibition are still in plaintiff's possession or are available to him if the exhibition is to be reinstated.)

■ The University is an instrumentality of the Commonwealth of Massachusetts and its administrators and trustees in actions taken in their official capacity are subject to the restrictions of the Fourteenth Amendment.

■ The expression of plaintiff's thoughts through the medium of his paintings and the exhibition of them is a form of "speech" within the protection of the Fourteenth Amendment as it incorporates the First Amendment.

Roth v. United States, 354 U.S. 476, 487, 77 S.Ct. 1304, 1 L.Ed.2d 1498; Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098.

■ Plaintiff, of course, makes no contention that he is entitled to hang his paintings anywhere on University property at any time he wishes, or even that the University was required to provide any facilities for the exhibition of works of art. In the present case the University had adopted the policy of allowing such exhibitions. It had provided an area open to the public, and had moreover taken steps to adapt this area for that particular purpose. Plaintiff had fully complied with the procedure for scheduling a time for his exhibition and the works had been placed on display. In these circumstances, the court agrees with plaintiff that his right to maintain his exhibitions for the scheduled period came within the protection of the First and Fourteenth Amendments. Thereafter defendants could terminate the exhibition and remove his paintings only in accordance with regulations narrowly drawn to serve the legitimate interests of the University. Wolin v. Port of New York Authority, 2 Cir., 392 F.2d 83; East Meadow Community Concerts Association v. Board of Education of Union Free School Dist. No. 3, Nassau County, 18 N.Y.2d 129, 272 N.Y.S.2d 341, 219 N.E. 2d 172; Danskin v. San Diego Unified School District, 28 Cal.2d 536, 171 P.2d 885. Having chosen to permit and even to encourage expression in the form of exhibitions of art, the University cannot by arbitrary or discriminatory action bar plaintiff from exhibiting his work for the period to which under the existing procedure he had become entitled to do so. Brooks v. Auburn University, D.C., 296 F.Supp. 188.

In January, 1967, of course, the University had no regulations under which an exhibition could be terminated. It is not necessary, however, in this case to hold that in the absence of such regulations the University could not under any circumstances terminate an exhibition of art. The court will assume that

even without such regulations the University could have terminated the exhibition if there existed any grounds sufficient to justify under the Constitution such a restraint of plaintiff's freedom of expression. No such grounds can be found in this case.

 There was nothing in the evidence to show that the continuance of the exhibition for the scheduled period would have in any way resulted in any substantial interference with any legitimate interest of the University. At most the exhibition seems to have displeased some persons who saw it, and to have given rise to some lively discussion. There was some vague evidence of a few complaints made to officials of the University. There was also evidence of one anonymous threat to damage the paintings, and evidence that one of the paintings had been stolen.[1] There was nothing to indicate any possibility of disorder or of interruption of the University's activities. At most the exhibition was a source of some annoyance or embarrassment, but this is far from providing adequate justification for infringement of plaintiff's constitutional right to free expression. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731; Hammond v. South Carolina State College, D.C., 272 F.Supp. 947.

There seems to have been no formal finding or statement by the defendants as to the reason why the paintings were removed. From the evidence it appears only that the officers who decided that they should be removed were agreed that this should be done because the paintings were "inappropriate". It needs no discussion to find that mere "inappropriateness" not further explained or defined is far too vague a standard on which to base any limitation of freedom of expression.

The conclusion must be that the removal of plaintiff's paintings from exhibition was a denial of his right to freedom of expression in violation of the Fourteenth Amendment as it incorporates the First Amendment.

An order will issue directing the defendants to permit plaintiff to reinstate his paintings for exhibition in the area from which they were removed, said exhibition to continue for the number of days remaining of the time originally scheduled for the exhibition in 1967. If parties cannot agree on the exact time or other details of the reinstatement, the court on proper motion will issue a further order determining such details.

---

1. Security guards were available and could be assigned to protect the exhibition, as had been done on earlier occasions when thefts of works of art on exhibition had been reported.