AMERICAN CIVIL LIBERTIES UNION
OF VIRGINIA, INC., Deborah
Thurmon, Plaintiffs,

v.

RADFORD COLLEGE, an agency of the
State of Virginia as represented by
Charles K. Martin, President, Frances
A. Hurlburt, Dean of Students, Radford
College Senate, Charles K. Martin, Pre-
siding Officer, Defendants.

Civ. A. No. 70-C-25-R.

United States District Court,
W. D. Virginia,
Roanoke Division.

Aug. 5, 1970.

894

---

Robert P. Dwoskin, Roanoke, Va., for plaintiffs.

W. H. Ryland, Asst. Atty. Gen., Richmond, Va., for defendants.

## OPINION and JUDGMENT

DALTON, Chief Judge.

This action involves an attempt by a group of students at Radford College, a state institution, to gain recognition as a campus chapter of the American Civil Liberties Union of Virginia, Inc. The Radford College Senate has denied such recognition and the plaintiffs have brought this suit alleging deprivation of rights under the first and fourteenth amendments and praying for declaratory and injunctive relief. Jurisdiction is alleged to exist under 28 U.S.C. §§ 1331, 1343, 2201 and 2202 and 42 U.S.C. §§ 1981, 1983 and 1985. Defendant Radford College moves this court to dismiss the complaint for failure to state a claim upon which relief can be granted. For reasons which will appear the motion to dismiss is denied and this court proceeds to a determination of the merits.

In early Fall, 1969, a group of Radford College students, including plaintiff Thurmon, desired to form and gain recognition for a campus chapter of the American Civil Liberties Union (ACLU) of Virginia. The Radford College Student Handbook provides (at page 64) that a student organization applying for recognition must submit an application to the Committee on Clubs and Organizations which sets out: (1) a list of ten or more charter members; (2) names of tentatively elected officers; (3) a tentative faculty advisor; and (4) fifteen copies of a proposed constitution. These procedures were complied with, and after some weeks of discussion and clarification, the Committee, which is composed of both students and faculty members, voted unanimously to approve the application. The matter then proceeded to the College Senate, which is composed solely of members of the faculty and administration. The application was tabled on meetings of the College Senate of January 29 and February 12, 1970, and in the second meeting the Committee on Clubs and Organizations was directed to formulate criteria for the recognition of student organizations. On March 4, 1970, the Committee on Clubs and Organizations submitted a report to the College Senate dealing with the criteria for formation of new campus organizations. This report was modified to a small degree by the March 9, 1970 report of the College Senate Ad Hoc Committee on Formation of New Campus Organizations.[1] By resolution

---

1. Ad Hoc Committee Report

Recognition must be obtained before a group may function as an approved Radford College organizations (sic).· Recognition entitles an organization to the use of all forms of campus publicity, sponsorship of activities, and the use of college facilities.

A new organization must make application to the Chairman of the Committee on Clubs and Organizations. The application should include:

1) A list of ten or more charter members.

2) The names of tentatively elected officers.

3) The name of a tentative faculty advisor.

4) Twenty copies of a proposed local constitution, and National Constitution, if applicable.

The application is reviewed by the Committee on Clubs and Organizations, and a recommendation regarding recognition is made by the College Senate, which is subject to review by the Board of Visitors. Notification of the decision is then made to the organization.

The following criteria are used in evaluating the application for recognition:

1) The purpose and practices of the organization and its parent organization shall be consistent with the broad educational philosophy of Radford College which includes the intellectual, cultural,

dated April 12, 1970, the College Senate voted not to recognize a local chapter of the ACLU as a campus organization.[2]

According to the report of the Ad Hoc Committee, "(r)ecognition entitled an organization to the use of all forms of campus publicity, sponsorship of activities, and the use of college facilities." Nonrecognition, however, does not necessarily preclude use of such facilities, as the resolution denying recognition to the ACLU expressly makes clear. It appears that student religious organizations have never been recognized as on-campus organizations but that they have still functioned successfully notwithstanding the lack of recognition. It further appears that nonrecognized organizations can purchase space in the school annual on the same basis as recognized organizations. Radford places restrictions on recognized clubs by requiring them to submit quarterly financial reports and to have approved sponsors. The College has recognized, among other groups, local chapters of the Young Republicans and Young Democrats.

▮ What is involved in this case is not the right of the ACLU to come on a college campus and seek to form a local chapter, but the right of interested students on that campus to form such a chapter and gain official college recognition for it. Since it appears from the

social, and personal development of the individual.

2) The organization shall abide by the constitutions and laws of the United States of American (sic) and the Commonwealth of Virginia and shall not appear on the U. S. Attorney General's list of subversive organizations.

3) The activities of the organization and its parent organization shall not interfere with the rights of other individuals or groups of the Radford College community.

4) There shall be sufficient interest in and need for the organization expressed by the charter members.

5) The organization shall have aims and objectives which comply with those of tax-supported educational institutions.

The status of an organization as a recognized organization on Radford College's campus is subject to review at the discretion of the Committee on Clubs and Organizations.

The above criteria do not rescind the policy previously established that, although special interests in religious, political, and social activities from time to time may lead to formation of organizations, nevertheless, the college may withhold recognition of such organizations. Nonrecognition of such a proposed organization does not necessarily imply disapproval of that organization, but may indicate that such an organization might be more free to attain its objectives if it is not subject to the restrictions of a campus organization:

1) Recognition is withheld from religious organizations which may function only as off-campus organizations, but are granted the use of all forms of on-campus publicity.

2) Recognition of social sororities shall be limited to those currently in existence.

3) Recognition will be withheld from academic, social, economic, and political groups whose aims may be achieved by participation in organizations already recognized by the college.

2. College Senate Resolution

Whereas, we, the Senate of Radford College, feel that the role and purpose of the American Civil Liberty Union lies basically outside the scope and objectives of this tax supported educational institution; and

Whereas, the aforesaid Senate of Radford College feels that the objectives and purposes of the local chapter of the American Civil Liberty Union may be better served as an off-campus organization without those hindrances imposed by the college rules, regulations and restrictions; and

Whereas, while this Senate does not necessarily disapprove of the basic ideas and purposes of the American Civil Liberty Union, but does feel that the work of the aforesaid American Civil Liberty Union may be carried on with more freedom outside the college organization; now therefore,

Be it resolved that Radford College may make available to this organization, as it has to other organizations, not recognized by the college, campus facilities including publicity media and physical facilities as college facilities permit; and

Be it resolved that for the foregoing reasons Radford College not recognize the local chapter of the American Civil Liberty Union as a campus organization.

record that a number of Radford students are members of the ACLU of Virginia, the court believes that this organization has standing to assert this right of its members. See National Student Association v. Hershey, 134 U.S.App.D. C. 56, 412 F.2d 1103, 1120–1121 (1969).

■ Student organizations do not have an unqualified right to be recognized by a college administration. College officials properly have wide discretion in operating the school and in determining what actions are most compatible with its educational objectives. See Norton v. Discipline Committee of East Tennessee State University, 419 F. 2d 195 (6th Cir. 1969); Esteban v. Central Missouri State College, 415 F.2d 1077 (8th Cir. 1969) (Blackmun, J.); Clemson University Vietnam Moratorium Committee v. Clemson University, 306 F.Supp. 129 (D.S.C.1969). For example, courts have been unwilling to question the propriety of a college banning all social organizations with national ties. Webb v. State University of New York, 125 F.Supp. 910 (N.D.N.Y. 1954). This court has no desire to interfere with the operations of any school or to give encouragement to the trend of increasing challenges to the considered decisions of university administrators.

■ Notwithstanding the wariness by this and other courts of the problems involved, it has been recognized that students in publicly supported schools do not abandon their rights to constitutional protection. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). When a serious claim of infringement of first amendment rights is made, it is the court's duty to investigate the merit of such a claim.

■ It needs no citation to suggest that first amendment liberties have been considered as among the most important guaranteed to citizens in the Bill of Rights. That the right to receive information and ideas is included in these first amendment liberties is well established. Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); Lamont v. Postmaster General, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965); Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed.2d 430 (1945). This is not surprising when one considers what value the right to free speech would have if the right to hear such speech could be foreclosed.

■ There have been a number of cases in the last several years involving Constitutional challenges on first amendment grounds to the actions of college administrators. A perusal of these cases makes clear a recurring theme that once a public school makes an activity available to its students, faculty, or even the general public, it must operate the activity in accord with first amendment principles. Thus, while it might be constitutional for a state university to deny use of its facilities to all outside speakers, it is clearly unconstitutional to allow some outside speakers to use facilities but to deny their use to speakers who are controversial or considered undesirable by the college administration, board of trustees, or state legislature. "(A)s it opens the lecture halls it must do so nondiscriminatorily." Stacy v. Williams, 306 F.Supp. 963, 971 (N.D.Miss.1969). See Brooks v. Auburn University, 412 F.2d 1171 (5th Cir. 1969), aff'g 296 F.Supp. 188 (M.D.Ala. 1969); Smith v. University of Tennessee, 300 F.Supp. 777 (E.D.Tenn.1969); Snyder v. Board of Trustees of University of Illinois, 286 F.Supp. 927 (N.D. Ill.1968); Dickson v. Sitterson, 280 F. Supp. 486 (M.D.N.Y.1968). Such restrictions also cannot be applied to outside organizations when such facilities have been made previously available to outside organizations. American Civil Liberties Union v. Board of Education, 55 Cal.2d 167, 10 Cal.Rptr. 647, 359 P.2d 45 (1961); East Meadow Community Concerts Association v. Board of Education, 18 N.Y.2d 129, 272 N.Y.S.2d 341, 219 N.E.2d 172 (1966); Buckley v. Meng, 35 Misc.2d 467, 230 N.Y.S.2d 924 (Sup.Ct.1962); Annot., 94 A.L.R.2d 1274 (1964). Neither can a state uni-

versity support a campus newspaper and then try to restrict arbitrarily what it may publish, even if only to require that material be submitted to a faculty board to determine whether it complies with "responsible freedom of the press." Antonelli v. Hammond, 308 F.Supp. 1329 (D.Mass.1970). It cannot prohibit the campus newspaper from publishing an editorial critical of the governor or state legislature. Dickey v. Alabama State Board of Education, 273 F.Supp. 613 (M.D.Ala.1967), vacated as moot, Troy State University v. Dickey, 402 F.2d 515 (5th Cir. 1968). A public school newspaper cannot prohibit all paid political advertisements even though such views could be expressed in letters to the editor. Lee v. Board of Regents of State Colleges, 306 F.Supp. 1097 (W.D.Wis. 1969); Zucker v. Panitz, 299 F.Supp. 102 (S.D.N.Y.1969). Similarly, a state university cannot invite a faculty member to give an exhibition of his art for a specified period in accord with an informal procedure and then remove the exhibition after only a few days merely because it provoked some controversy. Having fostered such exhibition, the college could remove them only pursuant to regulations narrowly drawn to serve the legitimate interests of the university. Close v. Lederle, 303 F.Supp. 1109 (D. Mass.1969).

█ Students have the right to wear symbolic armbands or "freedom buttons" when such wearing does not unduly disturb the discipline and normal operation of the school. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). Compare Burnside v. Byars, 363 F.2d 744 (5th Cir. 1966) with Blackwell v. Issaquena County Board of Education, 363 F.2d 749 (5th Cir. 1966).

█ This court has discovered only one case, however, which is closely analogous to the one at bar. In Healy v. James, 311 F.Supp. 1275 (D.Conn., April 24, 1970) a local chapter of the Students for a Democratic Society, which professed not to be subject to the control of the national organization, sought to be recognized at Central Connecticut State College. The president of the college went outside the group's application and attributed to it the aim of violent activism. Nonrecognition at the college meant that a group was prohibited from using any school facilities. The court held that while the college had no obligation to accord official recognition to an organization dedicated to violent or unlawful action, it did have to give the students a hearing at which they could respond to these charges.

The *Healy* case is instructive but it is not determinative of the controversy at hand. There is no allegation in this case that the ACLU is an organization which seeks to use violent or other unlawful means to accomplish its goals. On the other hand, nonrecognition on the Radford campus does not preclude an organization from engaging in meaningful activity, although the plaintiffs' complaint seems to suggest that it does. The previously mentioned success of the student religious organizations is evidence of the nonfatal consequences of nonrecognition.

In addition to whatever psychological boost recognition gives to an organization, it is clear that it also "entitles an organization to the use of all forms of campus publicity, sponsorship of activities, and the use of college facilities." [3] The argument that nonrecognition does not prevent students from participating in ACLU programs or perhaps using school facilities after application to the proper school officials does not meet the real question. The actual issue is whether a state institution such as Radford can deny recognized status and whatever privileges and rights flow from that status to the ACLU when it has accorded that status to other organizations which have complied with the prescribed procedures. The contention that Radford College has not restricted

---

3. Ad Hoc Committee Report, note 1, *supra*.

the group's activities but has only given privileges to some other campus groups misses the point because restriction and privilege are different sides of the same coin. One group is restricted from doing what another group is privileged to do.

The fact that the ACLU group might operate successfully without campus recognition is not controlling because "it is the character of the right, not of the limitation" that is important. Thomas v. Collins, 323 U.S. 516, 530, 65 S.Ct. 315, 322, 89 L.Ed.2d 430, 440 (1945). In that case a requirement that union organizers register with the secretary of state before soliciting persons to join a union was held to be an unconstitutional restraint on free speech. Lamont v. Postmaster General, 381 U.S. 301, 85 S. Ct. 1493, 14 L.Ed.2d 398 (1965) struck down a requirement that an addressee of nonsealed mail from abroad which the Secretary of the Treasury considered to be "communist political propaganda" must send a postcard to the Postmaster General in order to receive such mail. In a case litigating college students' rights to hear speakers prohibited from speaking on campus by a speaker-ban law, it has been noted:

> [I]t is no objection to plaintiffs' standing here to assert that they could have heard (the prohibited speaker) at some off campus location, or that they would have heard him speak on some less volatile subject.

Snyder v. Board of Trustees of University of Illinois, 286 F.Supp. 927, 932 (N.D.Ill.1968). Similarly, it is no answer in this case to say that the ACLU group was perfectly free to meet in off-campus facilities.

The Radford College Senate resolution denying recognition to the ACLU group provided that the college "may make available to this organization * * * campus facilities." Even assuming that the college would grant use of facilities as a matter of course on application of the ACLU group, the organization apparently still would have to submit a special application for each planned activity. Such an application requirement would be a prior restraint on first amendment rights and similar to the registration requirement in *Collins* and the postcard requirement in *Lamont.* Of course the ACLU would be as subject to reasonable scheduling requirements as are other campus organizations.

The April 9, 1970 resolution of the Radford College Senate states that the "role and purpose of the American Civil Liberty Union lies (sic) basically outside the scope and objectives of this tax supported educational institution." Certainly it is within the power of a college to deny recognition and use of facilities to an organization whose aims are inimical to the proper goals of the institution. The resolution, however, states only that the purpose of the ACLU is "basically outside the scope" of Radford College. At any rate the sentence is so vague that this court can only speculate on what the objectives of Radford might be. Indeed it is doubtful whether even the members of the Radford administration and faculty could reach agreement as to what specific objectives the institution is dedicated. This language is remarkably similar to that formulated by Hunter College in devising rules to control use of college facilities for:

> Other programs offered by outside organizations insofar as they are determined to be compatible with the aims of Hunter College as a public institution of higher learning.

Buckley v. Meng, 35 Misc.2d 467, 230 N.Y.S.2d 924, 928 (Sup.Ct.1962). The court there held that the rule did not set "a standard of such clarity that one who reads it can know whether a given use falls within it or without" and therefore it was so vague as to be overbroad. *Id.* 230 N.Y.S.2d at 930.

To say that the "role and purpose" of the Young Republican Club and Young Democratic Club is within the "scope and objectives" and in the next breath say that the ACLU is without does not seem to treat with equality the petition of the ACLU students. We daresay that sometimes the Young Republican and Young Democrat Clubs would urge pro-

grams and ideologies not consonant with the ideas of the administration as to what the objectives of the college are. To reiterate, it is unclear from the record in this case just what the objectives are. Further, it occurs to the court that the request of the ACLU students to be recognized does not commit the college administration to adoption of or agreement with any of their contentions.

The court notes that recognition of an ACLU group as a campus organization by a state institution of higher education is not without precedent. The College of William and Mary and Old Dominion University, both supported by the Commonwealth of Virginia, have recognized ACLU groups as campus organizations. The ACLU is a well (but in many places unfavorably) known national organization with countless chapters, many of which are on-campus student groups. It is an organization of some 140,000 members from all over the country and is claimed to be a major voice in representing people of all political beliefs in court actions. Almost daily the courts of this country are presented problems by this litigious organization which must be determined in accord with constitutional principles even or perhaps especially when these positions are unpopular. The court is reminded of the timeworn and often quoted aphorism attributed to Voltaire, "I disapprove of what you say, but I will defend to the death your right to say it," even to the extent of according to the ACLU students the same status and privileges which are granted to other student organizations. The judgment of this court is that the ACLU students have a right to be recognized as a campus organization. If their conduct as a campus organization is unduly disruptive of the orderly functioning of the institution, this court will be the first to reconsider its decision.

The question whether Radford College is justified in denying recognition to student religious groups because of the church-state dichotomy and the no estab-

lishment clause of the Constitution is not presented and this court intimates no view upon it.

This court has granted declaratory relief but declines at this time to grant injunctive relief in the belief that the administration of Radford College will comply in good faith with the final judgment rendered in the cause by this court or on appeal.

Execution of this judgment is suspended pending appeal.

Each party shall pay its own costs.