**UNIVERSITY OF SOUTHERN MISSIS-SIPPI CHAPTER OF THE MISSISSIP-PI CIVIL LIBERTIES UNION et al., Plaintiffs-Appellants,**

v.

**UNIVERSITY OF SOUTHERN MISSIS-SIPPI et al., Defendants-Appellees.**

**No. 71–1801**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Nov. 18, 1971.

Rehearing and Rehearing En Banc Denied Dec. 16, 1971.

Coleman, Circuit Judge, concurred specially and filed opinion.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, et al., 5 Cir. 1970, 431 F.2d 409, Part I.

James E. Rankin, Ed Davis Noble, Jr., Asst. Attys. Gen., Jackson, Miss., A. F. Summer, Atty. Gen., William A. Allain, Asst. Atty. Gen., Jackson, Miss., for defendants-appellees.

Before WISDOM, COLEMAN, and SIMPSON, Circuit Judges.

WISDOM, Circuit Judge:

Twice this Court has been a harbinger of major expansions in the First Amendment rights of students. In Dixon v. Alabama State Board of Education, 5 Cir. 1961, 294 F.2d 150, we turned our backs on the old saw that attendance at a university was a privilege granted by the state and was therefore subject to whatever conditions the state sought to impose. Five years later, we said that students' rights to free expression cannot be curtailed unless that expression "materially and substantially interfere[s] with the requirements of appropriate discipline in the operation of the school." Burnside v. Byars, 5 Cir. 1966, 363 F.2d 744, 749. The Supreme Court adopted this phrase in the landmark case of Tinker v. Des Moines Independent Community School District, 1969, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731.

Today's decision requires us to break no new ground. During the summer of 1970, the plaintiff, the University of Southern Mississippi Chapter of the Mississippi Civil Liberties Union was denied official recognition as a student organization in accordance with the usual procedures provided by the University of Southern Mississippi for processing proposed charters of student organizations.[1] This denial meant that the Chapter could neither participate in University-approv-

Roy S. Haber, Jackson, Miss., Marvin M. Karpatkin, Joel M. Gora, New York City, Frank R. Parker, c/o Lawyers Committee For Civil Rights Under Law, Jackson, Miss., for plaintiffs-appellants; Melvin L. Wulf, New York City, of counsel.

---

1. The Chapter's application was submitted to the Director of Student Activities and presented by him to the Student-Faculty Committee on Student Organizations. The membership of the Committee is appointed by the University President, William D. McCain, and is presided over by the Dean of Student Affairs. The Committee consists of four faculty members and three students. After two meetings the Committee voted to deny the charter; the decision was approved by President McCain. Upon rehearing, the Committee stuck to its decision, and this action was filed. We need not consider the procedural adequacy of these proceedings since we have concluded that, however it conducted its business, the Committee failed to adduce any valid reasons for banning the Chapter from the University campus.

ed student activities nor conduct student activities on campus on its own initiative. Thus exiled, the Chapter filed suit in federal district court for a preliminary injunction to compel the University to approve its charter and grant it official recognition.

The district court found that the Chapter had requested and been denied a statement of reasons for the University's denial of its charter application, and held that the Chapter was entitled to such a statement. In addition, the district court considered each of the grounds which had been asserted by the University during the court proceedings to justify denial of a charter. The only ground which seemed to the district court to provide a possible basis for keeping the Chapter off campus was its litigious orientation.[2] This, said the district court, was not alone enough to justify the denial; but the court took the view that the university need not condone "frivolous, vexatious, and harassing actions to impede the legitimate function of a university." It therefore refused to order approval of the plaintiffs' charter. Instead, it simply provided plaintiffs with a new chance to apply for recognition, and, implicitly, the University with a new chance to adduce support for its assertion that the Chapter's activities would interfere with the operation of the University.[3]

 It is no longer a serious contention that "either students or teachers shed their constitutional rights to freedom of speech or expression at the school-house gate." *Tinker, supra,* at 393 U.S. 506, 89 S.Ct. 736, 21 L.Ed.2d 737. Student rights of free expression may be prohibited only if they "materially and substantially [interfere] with the requirements of appropriate discipline in the operation of the school." *Tinker* at 393 U.S. 509, 89 S.Ct. 738, 21 L.Ed.2d 739, citing Burnside v. Byars, 5 Cir. 1966, 363 F.2d 744, 749. When the restriction upon student expression takes the form of an attempt to predict in advance the content and consequences of that expression, it is tantamount to a prior restraint and carries a heavy presumption against its constitutionality. See Bantam Books, Inc. v. Sullivan, 1963, 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584; Organization for a Better Austin v. Keefe, 1971, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1. What is at issue here is whether the students affiliated with the Chapter will be permitted to use the buildings and grounds of the campus to conduct meetings and discussions. The restriction imposed by the University is analogous to one attempting to prevent a particular group or individual from speaking on school premises. Such "speaker bans" uniformly have been struck down. *E. g.,* Brooks v. Auburn University, 296 F.Supp. 188 (M.D.Ala. 1969); *see* Wright, The Constitution on the Campus, 22 Vand.L.Rev. 1027, 1050–51 (1969). The rationale of the speaker ban decisions is that it is plainly incompatible with our constitutional system for a state-supported institution to permit some speakers but turn others away "according to the orthodoxy or popularity

2. The district court found: "Of the reasons offered for the denial of the charter, the Court does not find sufficient merit in any to justify sustaining the University's position except for the barely tenable reasons based on the expressed threats of litigation by the local chapter and this history of the litigation waged by the state and national organizations."

3. The district court also noted, apparently on its own motion, that the Chapter proposed to include non-students as members. The record disclosed that on a prior occasion a charter had been denied to a group whose membership was to include non-students. Although the district court thought that the university should have "an opportunity to consider" this issue during any further proceedings, we see no reason why a justification never raised by the University should play a part in our disposition of this case. If the University did not see fit to object to the composition of the Chapter's proposed membership, we find it difficult to view the problem as significant enough to justify banning this organization from the campus of the University.

of their political or social views." Brooks v. Auburn University, 296 F. Supp. at 194. To sustain such censorial practices, a University would at the very least have to demonstrate a strong probability of the kind of material disruption spoken of in the *Tinker* case.

■ ■ The district court found only that the litigiousness of the national and state Civil Liberties Unions was a "barely tenable ground for denying the charter to the [USM] Chapter". Serious, bona fide litigation carried on by a minority group as a peaceful means of guaranteeing its rights in a larger community is a form of expression and association protected by the First and Fourteenth Amendments. NAACP v. Button, 1963, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405. As such, it cannot serve as a justification for keeping the Civil Liberties Union off the campus of the University unless the litigation itself would result in the kind of disruption spelled out in *Tinker*.

■ Only litigation conducted in bad faith could fill that bill. The lower court expressed the thought that if the Student Activity Committee were to make a new investigation, the Committee might turn up some support for the assertion that the Chapter's litigation would be vexatious and frivolous. This bare possibility, unsupported by any evidence in this record, does not justify a drastic curtailment of constitutionally favored expression. The assertion of novel and sometimes threatening positions through recourse to litigation might all too easily be characterized as vexatious or harassing by the individuals so threatened or surprised—and in perfectly good faith.

But, in our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression. Any departure from absolute regimentation may cause trouble. Any variation from the majority's opinion may inspire fear. Any word spoken, in class, in the lunchroom, or on the campus, that deviates from the views of another person may start an argument or cause a disturb-

ance. But our Constitution says we must take this risk, Terminiello v. Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949); and our history says that it is this sort of hazardous freedom—this kind of openness—that is the basis of our national strength and of the independence and vigor of Americans who grow up and live in this relatively permissive, often disputatious, society.

Tinker at 393 U.S. 508–509, 89 S.Ct. 737, 738, 21 L.Ed.2d 739. We think it far more compatible with free expression to relegate the University to its rights if the litigative activities of the Chapter should turn out to be carried on with disruptive intentions and do result in substantial disruption to the life of the University. In that event, the recognition granted the Chapter could be challenged and withdrawn in a fair proceeding based upon evidence of actual, and not vaguely predictive, misconduct.

The University has cited us to a recent case decided in the Second Circuit, Healy v. James, 1971, 445 F.2d 1122. In *Healy*, the court approved a denial of official recognition to the Central Connecticut Chapter of the Students for a Democratic Society ("SDS"). Without in any way implying our approval of the *Healy* decision, we need note only that it is factually distinguishable from the present case in two respects. First, SDS has not expressed any commitment to a policy of litigation, and certain members of SDS have advocated disruption as a means of achieving its goals. Second, in *Healy*, SDS actually demonstrated a refusal to abide by university procedures for dispute resolution when it behaved defiantly during a court-structured hearing to determine its status. The denial in *Healy* was therefore based at least in part upon some evidence of actual misbehavior and not upon unfounded prognostication of future conduct.

■ Finally, the University argues that the Chapter has in effect waived its right to relief from this Court by failing to resort to the procedure for rehearing

outlined by the district court. But we are unwilling to find fault with the Chapter for its impatience to achieve recognition for its constitutional prerogatives. It has now been more than a year since the Chapter was denied the same place in the sun on the campus of the University of Southern Mississippi accorded to other student organizations—without any justification at all, so far as we are able to discern.

We find it unnecessary to consider the adequacy of the procedure afforded the Chapter by the University, since even that procedure failed to produce any permissible justification for denying the Chapter's application. For the reasons stated herein, the judgment of the district court will be reversed, and the case remanded to the district court for the prompt issuance of an order requiring the University of Southern Mississippi to grant immediate approval to the application for recognition of the University chapter of the Mississippi Civil Liberties Union.

COLEMAN, Circuit Judge (concurring specially).

I am of the opinion that this is not purely a First Amendment case. The primary purpose of the proposed organization appears to be litigious rather than the right to receive and dispense information and ideas. I, therefore, would decide this appeal on Fourteenth Amendment (equal protection) grounds.

I do agree, in general, with the rationale of American Civil Liberties Union of Virginia, Inc. v. Radford College, 315 F.Supp. 893 (W.D.Virginia, 1970). In that case it was held that a tax supported college cannot apply restrictions to outside organizations "When such facilities have been made previously available to outside organizations". The record shows the existence of such outside or-

ganizations, as "Young Democrats" and "Young Republicans" on the Southern campus.

I agree heartily with what Judge Dalton wrote in *Radford*,

"Student organizations do not have an unqualified right to be recognized by a college administration. College officials properly have wide discretion in operating the school and in determining what actions are most compatible with its educational objectives * * *. This Court has no desire to interfere with the operations of any school or to give encouragement to the trend of increasing challenges to the considered decisions of university administrators." 315 F.Supp. 896.

On the record compiled below, however, Mississippi Southern failed to develop constitutionally permissible ground for the exclusion of A.C.L.U.

In this state of affairs I can only point to the language in *Radford, supra,* 315 F. Supp. at 899:

"If their conduct as a campus organization is unduly disruptive of the orderly functioning of the institution, this court will be the first to reconsider its decision."

With this comment, I concur in the opinion prepared for the Court by Judge WISDOM.

ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is Denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is Denied.