Brett **MERKEY** and Young Socialist Alliance, an unincorporated association,
Plaintiffs,

v.

The **BOARD OF REGENTS OF** the **STATE OF FLORIDA**, a body corp. of the State of Florida, et al.

Civ. A. No. 1598.

United States District Court,
N. D. Florida,
Tallahassee Division.
July 11, 1972.

Michael F. Cycmanick, Law Offices of James M. Russ, Orlando, Fla., for plaintiffs.

Rivers Buford, Jr., Gen. Counsel, Stephen Marc Slepin, Herbert D. Sikes, Counsel, State of Fla. Bd. of Education, Robert D. Bickel, Tallahassee, Fla., for defendants.

## MEMORANDUM–ORDER
## PRELIMINARY STATEMENT OF THE ACTION

MIDDLEBROOKS, District Judge.

On February 22, 1972, following dismissal of the original complaint for failure to state a claim upon which relief could be granted,[1] plaintiffs filed an amended complaint for declaratory and injunctive relief, seeking, *inter alia*, an order directing defendants to "issue the necessary permits, orders, or authorizations to secure the recognition of Young Socialist Alliance as a recognized and approved student organization at Florida State University to be treated on an equal basis with all the rights, privileges, opportunities and benefits which are provided to other campus organizations so recognized." Plaintiffs also maintained that this action should proceed as a class action as provided by Rule 23, Federal Rules of Civil Procedure.

Specifically, plaintiffs allege that the actions of defendants in denying recognition to plaintiff, Young Socialist Alliance, have denied plaintiffs certain First Amendment rights and rights of procedural due process and equal protection under the law. Plaintiffs further allege that all administrative and procedural steps were followed by them in connection with securing campus recognition for their political organization and that defendants acted arbitrarily and without procedural due process in denying campus recognition to the organization. In sum, plaintiffs complain that defendants exercised state authority to stifle activities protected by the First Amendment to the United States Constitution and that the state action taken is inconsistent with the guarantees of the First, Fifth and Fourteenth Amendments to the Constitution.

Defendants by answer denied the allegations that plaintiffs were deprived of any federal constitutional rights and further denied that plaintiffs had standing to bring this action to obtain recognition by and approval of defendants in order to function as a campus organization. It was also denied that any actions by defendants in denying recognition to plaintiffs were tainted by any constitutional infirmity.

As gleaned from the pleadings, stipulations and trial memoranda of the parties, the issues for determination in this proceeding may be stated as follows:

### I

Whether the denial of campus recognition to plaintiff organization violated plaintiffs' rights of freedom of speech, expression and association as guaranteed under the United States Constitution.

### II

Whether actions of defendants in denying campus recognition to plaintiff organization violated plaintiffs' Fourteenth Amendment rights by denying them equal application and benefit of the laws and regulations applicable to other persons and organizations seeking recognition on campuses in the state university system of the State of Florida and coerced plaintiffs into a conformity of political beliefs and associations that are prescribed and approved by defendants.

### III

Whether there was a sufficient basis in fact for defendants' denial of campus recognition for the Young Socialist Alliance.

Having heard testimony, having received evidence, having considered plead-

1. This cause was dismissed on January 21, 1972, following remand from the Fifth Circuit Court of Appeals after this Court had concluded that sitting as a single-judge district court plaintiffs were not entitled to relief. See Sherman et al. v. Board of Regents, 451 F.2d 572, 5th Cir. 1971, wherein the brief history of this cause is chronicled. This cause is now before the Court for decision on the merits following evidentiary hearing as the result of filing of the amended complaint.

ings, affidavits and pre-trial stipulations of the parties, and having judged the demeanor of witnesses testifying and having resolved the credibility choices to be made, this Court enters the following findings of fact and conclusions of law in conformity with Rule 52(a), Federal Rules of Civil Procedure:

## FINDINGS OF FACT

(1) On or about March 3, 1970, plaintiff, Young Socialist Alliance, by and through plaintiff Merkey, applied to Florida State University for recognition as a campus organization. The policies of the State of Florida Board of Regents, published by the university in its student handbook, provide in Section 7.-41 that "student organizations may be officially recognized by the university when approved by student governments or appropriate student-faculty committees on campus, provided that an officially recognized organization must not have as a purpose, either in name or in fact, the advocacy of the overthrow of the government by force or by other unlawful means." Pursuant to these regulations, application for recognition was made by plaintiff Merkey and one other applicant, Lieberman, on a form adopted by the University Office of Personnel Records, and specifying the name of the organization, date of application, officers of the organization, faculty consultant, basis of membership, classification of group (by professional, honorary, departmental, religious or other classification), local or national affiliation, purpose of the organization, activities for which the organization is responsible, means of financial support of the organization and date of organization.

(2) At the time application was made, plaintiff Merkey was not a student at the Florida State University but was serving on the staff of the university as an employee. The other named applicant, Lieberman, was at the time application was made, a student at the university but at present is no longer a student in good standing at the university. Presently, plaintiff organization is comprised of both students and non-students. None of the individual plaintiffs to this action are students at the Florida State University.

(3) The application for recognition was tentatively approved by the student senate and ultimately considered by the Florida State University Vice-President for Student Affairs. On March 6, 1970, D. Burke Kibler, III, then Chairman of defendant Board of Regents, issued a letter to the President of the University of Florida, a state university in the State of Florida university system, as is defendant Florida State University, concluding, on the basis of evidence possessed by Chairman Kibler, that the Young Socialist Alliance could not have the sanction of a state university in the State of Florida. The Florida State University Vice-President corresponded with defendant Board of Regents regarding the application of Chairman Kibler's letter relative to recognition of the Young Socialist Alliance, to other universities in the state university system, including the Florida State University. On March 27, 1970, in response to this inquiry, the university Vice-President was informed that the Kibler letter was intended to apply to all universities in the state university system and further that this conclusion was reached after considerable research and discussion with individuals aware of the Young Socialist Alliance's objectives. On the basis of this communication from the Board of Regents, the university Vice-President notified student government and the Young Socialist Alliance that the latter could not be recognized as a student organization at the Florida State University in light of the decision of the Board of Regents set forth in the aforementioned letters dated March 6, 1970, and March 27, 1970.

(4) At final hearing in this cause, defendant Kibler explained at length the reasons calling for the non-recognition of plaintiff Young Socialist Alliance as an approved campus organization. It was his testimony that he was familiar with the constitution of Young Socialist

Alliance which characterized the organization as "revolutionary".[2] Put on notice as to the revolutionary aims of Young Socialist Alliance, this defendant elected to research the etymology of the word "revolutionary" to determine its import as used in the Young Socialist Alliance constitution. Referring to the Oxford English Dictionary defendant Kibler concluded that "implicit" in the term "revolutionary" was the idea of change or reform accomplished by or through the use of force.

Inclined toward this view defendant Kibler then embarked on a course of personal research which consisted of reading various agency reports on activities of Young Socialist Alliance, articles and periodicals published or circulated by Young Socialist Alliance and excerpts of documented studies made of Young Socialist Alliance activities.[3] Defendant Kibler stated that his conclusions were based entirely upon personal research and study and that he did not hold any formal hearings to take testimony and receive evidence relative to the activities of Young Socialist Alliance; nor did he personally observe any Young Socialist Alliance activities on any university campuses which had caused disruption of legitimate educational processes.[4]

At trial defendant Kibler recalled several sources which led him to conclude that Young Socialist Alliance had as its aim and ultimate goal the violent overthrow of the government accomplished through disruptive means which necessarily included the use of force. A report by the Committee on Un-American Activities concluded that Young Socialist Alliance was involved in disturbances at the Berkeley and Watts riots. These disturbances were described in that source as caused in part by a "united front effort" consisting of numerous organizations of which Young Socialist Alliance was one. Another report which was contained in the Congressional Record and dated November 4, 1969, stated that the Student Mobilization Committee (S.M.C.) consisted heavily of Young Socialist Alliance members and concluded that S.M.C. aims were not intended to be that of "legitimate protest" but that of disrupting orderly governmental processes in line with the Marxist-Leninist communist philosophy. Another source, the "Boston Labor Forum" described the solidarity of Young Socialist Alliance with the Socialist Workers' Party.[5] These findings were heightened by remarks found in an issue of "The Militant", a revolutionary news periodi-

2. The national constitution of the Young Socialist Alliance provides in part as follows:

"The Young Socialist Alliance is a nation-wide revolutionary socialist youth organization, uniting young workers and students around the banner of socialism and dedicated to the building of a revolutionary movement which can band the working people to socialism. The Young Socialist Alliance bases itself on the principles of Marxism as developed by Lenin and Trotsky. . .

We believe that socialism can be initiated only as a result of struggle against the working class and its allies against the capitalist exploiters which culminates in the creation of a new type state, a working state."

3. Defendant Kibler stated that he was actuated in part by the climate of campus unrest pervading college campuses and that he wished to avoid "conflagrations" such as had occurred on other campuses.

4. It should be noted that much of the preliminary research in this matter was done for this defendant by certain staff members of the University of Florida who documented the printed material available and extracted pertinent portions which this defendant reviewed. It was this accumulation of annotated evidence along with Kibler's own independent research which assisted him in reaching his conclusion that Young Socialist Alliance should not be recognized as an approved organization within the university system.

5. This statement, Kibler confided, along with his own independent knowledge of the principles of Marx, as developed by Lenin and Trotsky, confirmed his belief that Young Socialist Alliance was the "Youth arm" of the Socialist Workers' Party and was designed to implement the principles espoused by these authorities.

cal, which issue contained a lengthy statement of the National Executive Committee of the Young Socialist Alliance. In speaking of student involvement on campuses, the author of the statement expressed the following:

"The correct, revolutionary strategy is one that permits the involvement of the student masses. Meaningful disruption of the functioning of the university is the work not of handfuls, but of masses."

In addition to this general store of knowledge of the aims and goals of Young Socialist Alliance, defendant Kibler also disclosed that he was aware that at least one of the Young Socialist Alliance applicants attempting to obtain recognition at the Florida State University had been a member of the Students for Democratic Society (S.D.S.) and that he had been involved in prior episodes of violent campus disruption.[6]

Based upon this information and knowledge, defendant Kibler concluded that the Young Socialist Alliance hierarchy sought to achieve disruption on university campuses and deterioration of orderly educational processes; and that based upon the Marxist-Leninist-Stalinist philosophy Young Socialist Alliance advocated the overthrow of established institutions of this democratic society, to be accomplished by the use of force if necessary.

(5) The Board of Regents as the governing board for the state university system of Florida is charged by the Florida legislature with the responsibility to oversee and accomplish the lawful aims of public higher education in the State of Florida. In the furtherance of this charge, the Board is empowered and directed to fashion policies designed to " * * * develop and teach lawful methods of change and improvement in the existing political and social order; . . . ." Section 240.001(1) (g),

Fla.Stat. (1971), F.S.A. The Board is further empowered " * * * to establish the policies, rules and regulations under which the State University System shall be managed and operated." Section 240.042(2) (a), Fla.Stat. (1971), F.S.A.

Pursuant to this mandate of the legislature, the Board of Regents has adopted and promulgated rules and regulations which are set forth and made public in the Board of Regents Operating Manual and the student handbook at the Florida State University, which rules and regulations as they relate to student organizations read in part as follows:

"Students shall be free to join university organizations. Student organizations may be officially recognized by the university when approved by student governments or appropriate student-faculty committees on campus. An officially recognized organization must not have as a purpose, either in name or in fact, the advocacy of the overthrow of the government by force or other unlawful means."

To define further the procedures governing the recognition of campus organizations, the university prior to the time plaintiff organization submitted its application for recognition had adopted standard operating policies and procedures governing the recognition of campus organizations. These procedures called for the filing of an application for recognition accompanied by copies of the constitution of the organization and its national affiliate where applicable. The procedures further provided for consideration of the application by both the student government at the university and the division of student affairs. This review, by definition, incorporates a consideration of all information contained on the application for recognition, including the purposes of the organizations, and a consideration of the charter or constitu-

6. Although Kibler admitted that he was not aware of plaintiff Merkey's involvement in any incidents of campus disruption, it was known to defendant university officials that plaintiff Merkey had been involved in disruptive activities both on and off campus.

tion of the organization and where applicable its national affiliate or affiliates.

Thus, both the Board of Regents' policy and the university's policies and procedures governing the recognition of organizations on the campus of the Florida State University define with specificity the information required for application for recognition as a campus organization and the procedures for review of application for recognition. This Court finds that plaintiff, pursuant to the aforesaid rules and regulations, submitted an application for recognition and further that the university and Board of Regents considered the application, the constitution of the applicant organization and a substantial amount of relevant information concerning Young Socialist Alliance in conformity with defendants' policies and procedures herein referenced. Whether defendants in following these policies and procedures complied with the requirements of due process and equal protection of the law is a question to be answered in this Court's conclusions of law.

(6) This Court finds no evidence that the rules and regulations and procedures herein referred to were not followed equally by defendants in all cases for application by organizations for campus recognition.

(7) The Court further finds that the information available to defendants and considered by them relative to the stated purposes and actions of the plaintiff organization coupled with the actions and activities of plaintiff Merkey and other alleged members of plaintiff organization provided ample justification and a substantial basis in fact for the denial of campus recognition to plaintiff Young Socialist Alliance. Plaintiff Merkey, shortly prior to the time application was made to defendants, had been arrested in connection with disruptive activities both on and off the campus of Florida State University. The other ap-

plicant Lieberman had also been arrested for disruptive activities on the university campus which ultimately led to his dismissal from the defendant university and which activities have provided the source of other litigation in this Court. See e. g., Center for Participant Education et al. v. Marshall et al., 337 F.Supp. 126 (N.D.Fla.1972).

(8) Notwithstanding the testimony given by plaintiff Merkey who disavowed that Young Socialist Alliance advocated revolution accomplished by force or violent means, this Court finds that the greater weight of the evidence leads to the inescapable conclusion that the philosophies of Marx, Lenin and Trotsky adhered to by Young Socialist Alliance advocate change by the use of force; consequently the "coming revolution" in this country prophesied by this leftist group necessarily would entail the overthrow of established institutions accomplished by the use of force or violent means.

A common thread running throughout this plaintiff's testimony was that following the communist philosophy espoused by the above authorities change was to be accomplished by a revolution of the masses and that it was to be a revolution without violence if possible; however, if the established institutions against whom change was to be worked resisted this revolutionary movement, then violence or force would be a legitimate means to achieve the desired result. It was conceded by plaintiff Merkey that he understood Lenin to recognize that revolutionary change would rarely be accomplished without the use of force inasmuch as there would be resistance to change by the established institutions. Thus, irrespective of plaintiffs' disclaimer of disruption as a political tactic, the Court finds that when the mandates of the national Young Socialist Alliance and its control over the policies and activities of local units [7] are

---

7. Testimony developed at trial disclosed that local units of Y.S.A. although possessing some semblance of autonomy were bound to and guided by the dictates of the national convention and executive com-

mittee who formulate policy and plan activities to be implemented by local units. Defendants in their denial of recognition to plaintiff organization found this fact to be a true and uncontroverted

considered together with findings hereinbefore made defendants justifiably concluded that plaintiff organization was predisposed to initiate and work toward the immediate overthrow of the government by force or other unlawful means and would cause disruption of legitimate education processes at the Florida State University.

## CONCLUSIONS OF LAW

(1) This Court has jurisdiction over the subject matter of and the parties to this action. Title 28, United States Code, Section 1343(3); Title 42, United States Code, Section 1983.

## STANDING

■ (2) Insofar as defendants challenge the standing of plaintiff Merkey to maintain this action as an individual party to this action because he was not at the time of suit a student at the university and affected by the action of defendants, this Court finds that plaintiff possessed the requisite interest in the outcome of this litigation as a member of Young Socialist Alliance so as to have a justiciable interest in its outcome. Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Compare Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). Thus, as between plaintiff Merkey and defendants there is a present case or controversy. See e. g., Smith et al. v. YMCA of Montgomery, Inc., 462 F.2d 634, 5th Cir. 1972).

■ (3) Relative to plaintiffs' assertion that they are entitled to maintain this suit as a class action "on behalf of all students in state universities in the State of Florida who are required to obtain recognition and approval as a 'recognized organization' by Florida State University and other state universities in order to function as a campus organization" this Court is inclined toward a different view. Aware that the recognition procedure must proceed on a case by case basis this Court finds that there are questions of fact and law which may not be common to those involving recognition of other similar organizations on other state university campuses. Too, since plaintiff Merkey is not a member of the class which he purportedly represents,[8] the requirement of Rules 23.2 and 23(d), Federal Rules of Civil Procedure, that the named plaintiff will fairly and adequately protect the interests of the class is wanting and leave to maintain this suit as a class action must be denied. It should be remembered that in order to have standing to bring a class suit the purported class representative must first and foremost be a member of the class which he seeks to represent. See Huff v. N. D. Cass Co. of Alabama, 5th Cir.1972 (Slip No. 71–2842, April 24, 1972). This plaintiff Merkey is not and the class action aspects of this cause cannot be sustained.

## PROCEDURAL DUE PROCESS

■ (4) In this action it is not disputed that the Board of Regents and the university have the power to oversee and to formulate rules and regulations of this type regarding conduct and activities at the university. Papish v. Board of Curators of University of Missouri, 331 F.Supp. 1321 (W.D.Mo.1971). See also Bright v. Nunn, 448 F.2d 245 (6th Cir.1971); Sword v. Fox, 446 F.2d 1091 (4th Cir.1971); Ferguson v. Thomas, 430 F.2d 852 (5th Cir.1970). Indeed under Florida statutory law, this power has been found to have been delegated to the Board of Regents and by the Board to the university. Moreover, the university possesses inherent general powers to maintain order and to protect the in-

---

fact. It was also disclosed that if a member of a local unit failed to abide by the rules and policies set by the national organization the disobedient party would be expelled from membership in Young Socialist Alliance.

8. It should be noted that it is alleged that the class which this plaintiff purportedly represents is that "of all students in state universities" and not merely members of Young Socialist Alliance.

stitution's well-being so long as it exercises sound discretion and does not act arbitrarily or capriciously. Barker v. Hardway, 283 F.Supp. 228 (S.D.W.Va. 1968), aff'd 399 F.2d 638 (4th Cir. 1968); Speake v. Grantham, 317 F. Supp. 1253 (S.D.Miss.1970).

■ (5) In asserting defendants denied them recognition for reasons which were arbitrary and discriminatory, plaintiffs also allege that defendants denied plaintiffs a notice or hearing regarding recognition without having found that plaintiffs' activities would constitute a threat of clear and present danger or disruption to the university system. It has been found that in deciding whether to grant or deny recognition to plaintiff organization, defendants reviewed the constitution of the organization, its stated purposes, goals and objectives, and substantial information relative to the organization, including its national affiliation and its activities. Although the ultimate consideration of this information and the decision to deny recognition was by defendant Kibler and was primarily directed to a request by Young Socialist Alliance for recognition on the campus of the University of Florida, these facts do not support plaintiffs' contentions that defendants acted arbitrarily and capriciously and without evidence in denying Young Socialist Alliance recognition on the campus of the Florida State University.

■ Insofar as recognition of plaintiff organization at the Florida State University is involved, the evidence considered by defendants included those materials pertinent to the Young Socialist Alliance, its purposes and affiliations which it desired to be considered pursuant to its claim for recognition and the prior involvement in campus disruption by the two primary applicants of plaintiff organization. That a formal plenary hearing was not held by defendants but only a review and consideration of information submitted by Young Socialist Alliance and other evidence related to it and its members does not establish that plaintiffs were denied procedural due process. Thus, where procedures provided for the submission of information relevant to the applicant organization, its purposes, affiliations and activities, and where upon consideration of that application defendants acted within their discretion in denying the application upon the specific record before them, there is no violation of constitutionally protected rights to procedural due process.[9] See American Civil Liberties Union of Virginia v. Radford College, 315 F.Supp. 893 (W.D.Va.1970). Recalling that "the touchstones of the application of due process are reasonableness and fairness in view of all the facts and circumstances of the particular case", Barker v. Hardway, supra, 283 F.Supp. at 237, this Court concludes that traditional notions of due process have not been offended.[10]

■ Finally this Court has considered in a proceeding attended by the submission of evidence by both the defendant university and plaintiff organization defendants' denial of recognition to Young Socialist Alliance. Assuming, *arguendo*, that plaintiff organization

9. Compare Healy v. James, 445 F.2d 1122 (2d Cir. 1971) rev'd 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972) (Case No. 71–452, June 26, 1972) where the Supreme Court found a violation of procedural due process not in the form of review utilized but in the manner of review which required the applicant organization to carry the burden of showing it was disassociated from the policies and tactics of any national affiliate and entitled to be recognized. Compare also, Law Students Civil Rights Research Council, Inc. v. Wadmond, 401 U.S. 154, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971).

10. In University of Southern Mississippi M.C.L.U. v. University of Southern Mississippi et al., 452 F.2d 564 (5th Cir. 1971), n. 1, the United States Court of Appeals for the Fifth Circuit failed to strike down the procedure utilized by the defendant university in denying recognition to plaintiffs which procedure was similar to that employed by defendants in the case *sub judice*.

had been denied procedural due process in the review of its petition for campus recognition, those deficiencies in prior proceedings would be cured and rendered moot in a *de novo* trial before this Court. Barker v. Hardway, supra. See also Fluker v. Alabama State Board of Education, 441 F.2d 201 (5th Cir.1971); Ferguson v. Thomas, supra.

### FIRST AMENDMENT RIGHTS

■ (6) It is now accepted that student organizations do not have an unqualified right to be recognized by a college administration. See e. g., American Civil Liberties Union v. Radford College, supra, 315 F.Supp. at 896. An equally accepted tenet of First Amendment law is that students and teachers do not shed their constitutional rights to freedom of speech or expression at the schoolhouse gate. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). From this premise it follows that student rights of free expression may be prohibited only if they "materially and substantially interfere with the requirements of appropriate discipline in the operation of the school." *Tinker*, supra, at 509, 89 S.Ct. at 738. "(But) when the restriction upon student expression takes the form of an attempt to predict in advance the content and consequences of that expression, it is tantamount to a prior restraint and carries a heavy presumption against its constitutionality. See Bantam Books, Inc. v. Sullivan, 1963, 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584; Organization for a Better Austin v. Keefe, 1971, 402 U.S. 415, 91 S.Ct. 1515, 29 L.Ed.2d 1. To sustain such censorial practices, a University would at the very least have to demonstrate a strong probability of the kind of material disruption spoken of in the *Tinker* case." University of Southern Mississippi M.C.L.U. v. University

of Southern Mississippi, supra, 452 F.2d at 566–567.

In addition other recent cases involving challenges on First Amendment grounds to actions of administrators of colleges and universities have clearly held that once a public university makes an activity available to its students, faculty or general public, it must operate that activity in accord with First Amendment principles. This premise has been made abundantly clear in the speaker ban cases. See Stacy v. Williams, 306 F.Supp. 963, 971 (N.D.Miss. 1969) aff'd 446 F.2d 1366 (5th Cir. 1971); Brooks v. Auburn University, 412 F.2d 1171 (5th Cir.1969); American Civil Liberties Union v. Radford College, supra, 315 F.Supp. at 896.

■ In sustaining defendants' non-recognition of plaintiff organization this Court is merely recognizing the power of a university to deny recognition of and use of facilities to any organization whose aims are inimical to the proper goals of the institution. American Civil Liberties Union v. Radford College, supra, at 898. In accord with this fundamental principle of law, the federal courts have consistently held that a college or university has the inherent power to expect its students to adhere to generally accepted standards of conduct and to have wide discretion in handling actual or imminently immediate threats of disruption and misconduct and not those which are merely vaguely predictive.[11] See e. g., University of Southern Mississippi M.C.L.U. v. University of Southern Mississippi, supra; Esteban v. Central Missouri State College, 415 F.2d 1077, 1089 (8th Cir.1969).

■ Applying these principles to the instant action it becomes evident that defendants in denying university recognition to plaintiff organization exercised a legitimate right to make a determina-

---

11. In Healy v. James, supra, the Supreme Court found the District Court erred in the standard applied. It would appear however, that that standard set by the Fifth Circuit would conform to the pronouncements found in Healy v. James, supra.

tion of what would best protect the stated educational goals of the State of Florida while at the same time exercising foresight in order to prevent interruption of the educational processes on the campus of a state university. Defendants had ample evidence, documented and undocumented, direct and indirect, general and specific, to support the conclusion that plaintiff organization would be a disruptive campus organization and that it did not present a merely "vaguely predictive" threat of misconduct. Therefore, on the basis of the foregoing campus recognition was denied.

Having considered the evidence and having made pertinent findings of fact this Court is of the opinion that there was ample evidence to justify the conclusion of defendants that plaintiff organization sanctions violence or disruption and as such constituted an imminently present threat of material disruption to the maintenance of the orderly educational processes of the university.[12] As in Healy v. James, supra, there has been a finding that the national organization and its membership supported a policy of disruption as a means of achieving the aims and goals contained in the organization's constitution. Unlike Healy v. James, supra, however, is the express finding, supported by a substantial factual basis, that plaintiff local organization by its constituency and its admitted purposes posed more than a mere speculative or conjectural threat of disruption to the university. The case, *sub judice*, is also dissimilar in respect to treatment of plaintiffs' First Amendment rights. Defendant Kibler himself expressed deep concern as to the impact of his decision relative to plaintiffs' associational rights but at the same time he could not discount the countervailing interests of the universities.

■ Thus, it having been found as a matter of law that defendants' actions

were supported by a substantial factual basis this Court's inquiry must cease since it has been determined, that when the findings of university and state officials are reached by correct procedures and are supported by substantial evidence they should be accorded great weight and not lightly overturned. Ferguson v. Thomas, supra.

## EQUAL PROTECTION OF THE LAWS

The terminal argument posed by plaintiffs is that defendants' actions in denying recognition to plaintiff organization deprived Young Socialist Alliance equal benefits under the law. In this regard plaintiffs' argument approached that of plaintiffs in the speaker ban cases, e. g. Stacy v. Williams, supra.

As was previously recognized the university has a legitimate interest in protecting itself from any organization whose aims are inimical to the proper goals of the institution. American Civil Liberties Union v. Radford College, supra. Consistent with this rudimentary principle of law, the Court in Stacy v. Williams, supra, fashioned guidelines to assist colleges and universities in determining whether in the acceptance or refusal of a tendered on-campus speaker or guest they were within constitutionally permissible limits of the First and Fourteenth Amendments of the Constitution in the course of action desired to be taken. If it were reasonably to appear that the speaker invited by a campus group would in the course of his speech advocate violent overthrow of the government of the United States, the State or any political subdivision thereof; willful destruction or seizure of the institution's buildings or other property; disruption or impairment, by force, of the institution's regularly scheduled classes or other educational functions, then the activity or conduct sought to be regulated by the university would not

---

12. " * * * Associational activities need not be tolerated where they infringe reasonable campus rules, interrupt classes or substantially interfere with the opportunity of other students to obtain an education." Healy v. James, supra, 408 U.S. at 189, 92 S.Ct. at 2350.

find protection within the First Amendment and the university could constitutionally forbid and guard against forms of speech and expression which advocate the above enumerated evils. Stacy v. Williams, 306 F.Supp. at 973. Once the university could show the presence of these substantive evils and the imminent threat to the university posed by them, then a First Amendment activity could be regulated or forbidden without offending the Equal Protection Clause of the Fourteenth Amendment of the Constitution notwithstanding the fact that other campus groups would be allowed to partake in free speech activities. In such instance the action of university officials could not be termed arbitrary and invidiously discriminatory and would not be deemed an unconstitutional prior restraint upon First Amendment rights. *Ibid.* at 970–971.

▇▇▇▇ Likening the case, *sub judice,* to the speaker ban cases, this Court finds that plaintiffs' equal protection argument withers when considered in light of those principles found in Stacy v. Williams, supra. Here the university and defendants seek to forbid a First Amendment activity by refusing to recognize Young Socialist Alliance as a university organization. The reasons given by defendants for their action is that plaintiff organization advocated the overthrow of established institutions of this society by the use of force and violent means and that by the advocacy of such principles posed a distinct threat to the orderly processes of the State of Florida and Florida State University.[13] The Court in its findings of fact has determined these facts to be the reasons for defendants' nonrecognition of plaintiff organization and has concluded that defendants' action is supported by a substantial factual basis. Without recanting all pertinent facts, the Court recalls that defendants not only took great measures to satisfy themselves that plaintiff organization advocated the overthrow of the government and established institutions by the use of force and violent means but also determined that Young Socialist Alliance was steeled for such immediate action on campus so as to create reasonable apprehension of imminent danger to the university. Particularly was this true in this case where it was shown that the two primary applicants, Merkey and Lieberman, had by their past and present conduct been involved in disruptive activities both on and off the university campus.

In sum the evidence discloses a good faith effort on the part of defendants in reaching their decision whether to grant Young Socialist Alliance campus recognition. The decision not to grant recognition was reasonably and fairly made and supported by substantial evidence and was not the product of any arbitrary or unlawfully discriminatory action on their part.

## CONCLUSION

The Court finds that plaintiffs were not denied any constitutional rights by defendants, that plaintiffs were accorded their rights of procedural due process, that there was a highly reasonable and just basis for the denial of recognition to Young Socialist Alliance as a campus organization of the Florida State University which denial was clearly estab-

---

13. In Stacy v. Williams, supra, the Court observed that "it must be made clear that the 'advocacy' prohibited must be of the kind which prepares the group addressed for imminent action and steels it to such action, as opposed to the abstract espousal of the moral propriety of a course of action by resort to force; and there must be not only advocacy to action but also a reasonable apprehension of imminent danger to the essential functions and purposes of the institution, including the safety and the protection of its officials, faculty members and students." *Ibid.,* 306 F.Supp. at 973–974.

In an earlier passage, the Court wrote: "To satisfy the clear and present danger test there must be a finding by proper authority either that immediate serious violence (or other substantive evil) was to be expected or was advocated, or that the past conduct furnished reason to believe that such advocacy was then contemplated * * *." *Ibid.* at 972.

lished by substantial evidence, and that plaintiffs were not subjected to any arbitrary or capricious treatment by defendants. Therefore, it is

Ordered that in conformance with the above and foregoing findings of fact and conclusions of law, defendants are directed to present to this Court an order disposing of those issues raised by the amended complaint within the time and in the form prescribed by the Federal Rules of Civil Procedure.